

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

No. PD-1644-06

GRADY LEWIS WARNER, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review of Case 14-05-00369-CR of the
Fourteenth Court of Appeals,
Burleson County

*WOMACK, J., delivered the opinion of the Court, in which MEYERS,
PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ.,
joined. KELLER, P.J., dissented.*

The issue in this case is the meaning of "custody" in the statute that defines the offense of escape; specifically, whether a person "escapes from custody" within the meaning of Section 38.06(a) of the Penal Code if, after an officer has grasped his arms and told him he is under arrest, he pulls free and runs away.

On such facts, a jury found the appellant guilty of the felony offense of escape. He appealed, claiming the evidence was legally and factually insufficient. The Fourteenth Court of Appeals held that the evidence was legally insufficient and acquitted the appellant.[1]

We granted the State's petition for review which asked two questions. The first was whether, when deciding whether an individual is guilty of the offense of escape, a jury is authorized to employ any meaning of the term "arrest" that is acceptable in common parlance. We hold that it is not.

The other question was whether our decision in *Medford v. State*[2] should be re-examined. After re-examining it, we hold that it was correctly decided, although its decision was not exactly as the Court of Appeals described it.

*The Escape Statute*

The offense of escape is defined by Section 38.06 of the Penal Code. When this case arose (before September 1, 2007) the section read:

(a) A person commits an offense if he escapes from custody when he is:
    (1) under arrest for, charged with, or convicted of an offense; or
    (2) in custody pursuant to a lawful order of a court.
(b) Except as provided in Subsections (c), (d), and (e), an offense under this section is a Class A misdemeanor.
(c) An offense under this section is a felony of the third degree if the actor:
    (1) is under arrest for, charged with, or convicted of a felony; or
    (2) is confined in a secure correctional facility; or
    (3) is confined to a secure correctional facility, as defined by Section 51.02, Family Code, other than a halfway house, operated by or under contract with the Texas Youth Commission.
(d) An offense under this section is a felony of the second degree if the actor to effect his escape causes bodily injury.

---

[1] *Warner v. State*, 201 S.W.3d 197 (Tex. App. — Houston [14th Dist.] 2006).

[2] 13 S.W.3d 769 (Tex. Cr. App. 2000).

(e) An offense under this section is a felony of the first degree if to effect his escape the actor:

> (1) causes serious bodily injury; or
> (2) uses or threatens to use a deadly weapon.[3]

Although it does not apply directly to this case, because it was enacted after commission of the alleged offense, a subsequent amendment may inform our consideration. In 2007, Subsection (a) was amended to read:

> (a) A person commits an offense if he escapes from custody when he is:
> (1) under arrest for, charged with, or convicted of an offense;
> (2) in custody pursuant to a lawful order of a court;
> (3) detained in a secure detention facility, as that term is defined by Section 51.02, Family Code; or
> (4) in the custody of a juvenile probation officer for violating an order imposed by the juvenile court under Section 51.02, Family Code.[4]

*Proceedings in the Courts Below*

In the District Court, Burleson County Deputy Sheriff Justin Royall testified that on January 3, 2004, he drove in his patrol vehicle to investigate a report of a domestic dispute involving the appellant. The dispatcher told Deputy Royall that a "blue" warrant had been issued, authorizing the appellant's arrest for a parole violation. Deputy Royall found a group of people standing in front of a residence. He said he needed to talk to the appellant, who walked to the patrol vehicle with the deputy. The appellant was backed up against the vehicle when Deputy Royall placed his hands on the appellant's arms and told him he was under arrest. When the deputy took his right hand off the appellant and reached for his handcuffs, keeping his left hand

---

[3] Act of June 18, 1999, 76th Leg., R.S., ch. 526, § 1.

[4] Act of June 15, 2007, 80th Leg., R.S., ch.908, § 38.

on the appellant's wrist, the appellant struggled and broke free from the officer's hold. He ran into the woods. The deputy pursued the appellant, but he got away.

Although the deputy's testimony was impeached with statements he made in his offense report and contradicted by the testimony of the appellant's relatives, the Court of Appeals properly looked at the evidence in the light most favorable to the verdict of guilt and reviewed its legal sufficiency by asking whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[5] The Court concluded:

> Here, there is some evidence from which a rational jury could believe that Deputy Royal [*sic*] placed his hands on appellant's arms and was still grasping one arm with his left hand when appellant broke free and fled. Thus, the question before us is whether the grasping of a suspect's arm while orally telling him he is under arrest constitutes "custody."[6]

The Court construed the term "custody" in the context of 38.06 by citing our decision in *Medford*. The Court summarized our holding in *Medford* as follows:

> There, the court of criminal appeals held the defendant was not in "custody," because an "arrest" is complete only "when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority." Of course, an escape can only occur where the officer is *unable* to "successfully" restrain the defendant. Thus, under the court of criminal appeals' construction of the statute, no person may be prosecuted for escape where he succeeds in prying himself loose from the officer's grasp.[7]

The Court found the facts in the present case to be indistinguishable from those in *Medford*, and therefore held that the evidence was legally insufficient to support the appellant's conviction for escape. The Court reversed the decision of the trial court and acquitted the

---

[5] *See Warner*, 201 S.W.3d, at 199.

[6] *Ibid.*

[7] *Id.*, at 200 (footnote omitted).

appellant. Having sustained the appellant's legal-sufficiency claim, the Court did not reach the appellant's second point of error.[8]

*The State's Argument*

In this court, the State argues that, because the Legislature did not specifically define the term "arrest" as it is used in § 38.06, the jury may assign to the term any meaning that is acceptable in common parlance. Therefore, a jury adopting such a meaning cannot be considered to have acted irrationally. Because the evidence indicated the arresting officer's intention to detain or take the appellant into custody, the evidence was sufficient for the jury to determine the appellant had been placed under arrest. The State asserts that, to the extent we held otherwise in *Medford*, we should overrule that decision.

The State further argues that, in *Medford*, this court usurped the legislature's authority to define the conduct that constitutes criminal offenses. In that case, the State claims, we improperly determined what conduct should fall within the escape statute by narrowing the definition of "arrest."

The State relies on a pre-*Medford* case, *Vernon v. State*,[9] for support. In *Vernon*, we said that terms that were not legislatively defined were to be understood to have their ordinary meanings, and, accordingly, jurors could assign to those words any meaning that was "acceptable in common parlance."[10] The State contends that the legislature, had it wanted to, was free to provide that a "completed arrest" was necessary to an escape and to define what a "completed

---

[8] *Ibid.*

[9] 841 S.W.2d 407 (Tex. Cr. App. 1992).

[10] *Id.*, at 409.

arrest" means for the offense of escape. The fact that the legislature has been silent on the issue indicates its intent not to so restrict the meaning of the term "arrest."

*Medford v. State*

In *Medford*, the arresting officer told the appellant he was under arrest and asked him to put his hands behind his back.[11] As the officer grasped the appellant's arm to put handcuffs on him, the appellant broke loose and fled. The appellant was convicted of escape and possession of cocaine, and he appealed.[12]

The Third Court of Appeals reversed the escape conviction, concluding that the appellant had not been placed under arrest because the officer never secured custody and control of him.[13] Without a completed arrest, the appellant could not have escaped within the meaning of Section 38.06. The Court of Appeals relied in part for its conclusion on the meaning of "arrest" contained in Article 15.22 of the Code of Criminal Procedure, the only statutory definition the legislature had provided for that term.[14]

On petition to this court, the State raised two grounds for review. The first, which is identical to that raised by the State in this case, asked us to consider whether a jury could use any meaning of "arrest" acceptable in common parlance when deciding guilt on the offense of

---

[11] *Medford*, 13 S.W.3d, at 771.

[12] *Ibid.*

[13] *Ibid.*

[14] *Ibid.* (The definition of "arrest" in Art. 15.22 stated that a person is under arrest "when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer arresting without a warrant.")

escape.[15] The second asked whether, when reviewing the sufficiency of the evidence for an "escape" conviction, a court could use the definition of "arrest" contained in Article 15.22.[16] We answered "no" to both questions and determined another definition to be appropriate.[17]

We said that, generally, a term not defined by the legislature may be understood by its meaning in ordinary usage, and therefore jurors might assign to it any meaning "acceptable in common parlance."[18] However, the term "arrest" falls within an exception because it is a technical term, possessing a long history as such in the common law, that principles of construction dictate be given its technical meaning.[19] Therefore, "it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest."[20]

Neither would it be appropriate, we said, to use the definition of "arrest" in Article 15.22.[21] "[I]t does not take long to discover there is a frustrating circularity in the definitions of 'arrest' in Article 15.22 and 'custody' in § 38.01 of the Texas Penal Code. Succinctly stated, custody is defined as being 'under arrest,' and arrest is defined as being 'taken into custody.'"[22]

---

[15] *Ibid.*

[16] *Ibid.*

[17] *Id.*, at 771, 772.

[18] *Id.*, at 771-72.

[19] *Id.*, at 772.

[20] *Ibid.*

[21] *Ibid.*

[22] *Ibid.*

We noted that jurors needed a more precise and uniform definition in order to determine what circumstances constitute a completed arrest.[23] We held that:

> [f]or purposes of the escape statute, an "arrest" is complete when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority. Furthermore, an arrest is complete only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."[24]

We vacated the judgment of the Court of Appeals and remanded the case for further proceedings consistent with our opinion.[25]

Our decision in *Medford* was criticized by the Court of Appeals in this case, on the ground that "an escape can only occur where the officer is *unable* to 'successfully' restrain the defendant. Thus, under the court of criminal appeals' construction of the statute, no person may be prosecuted for escape when he succeeds in prying himself loose from the officer's grasp."[26]

While it is true that an escape may involve proof that an officer was unable to *continue* to restrain a person who had been in custody, the language of the statute expressly requires that a person have been in custody before he can escape. To paraphrase the Court of Appeals' language, escape can occur only after an officer *has* successfully restrained or restricted a suspect — that is, when the officer's grasp has amounted to an arrest. To hold otherwise would ignore the distinction the legislature has made between the offense of escape and the offenses of evading

---

[23] *Ibid.*

[24] *Id.*, at 773.

[25] *Id.*, at 774.

[26] *Warner*, 201 S.W.3d, at 200.

arrest (which a person commits when "he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him")[27] and resisting arrest (which a person commits when he "intentionally prevents or obstructs a person he knows is a peace officer … from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another").[28] Those are the offenses that a person commits when the officer has not successfully restrained or restricted a suspect.

To hold otherwise also would use the terms "arrest" and "custody" interchangeably. To clarify, arrest is a subset of custody. In the case before us and in *Medford,* the question was whether a person was in custody by being under arrest, but that is not always the case. The escape statute that we are construing expressly provided that custody may include other things. A person may be in custody while "charged with" or "convicted of an offense," "pursuant to a lawful order of a court," or while "detained in a secure detention facility."[29]

Having re-examined and adhered to our holding in *Medford*, we affirm the judgment of the Court of Appeals that the evidence was legally insufficient to sustain a conviction for escape.

Delivered July 2, 2008.
Publish.

---

[27] *See* PENAL CODE § 38.04(a).

[28] *See* PENAL CODE § 38.03(a).

[29] PENAL CODE § 38.06(a).