# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00633-CV

## In the Matter of B. J. J.

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-27,150, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

B.J.J., a juvenile, was adjudicated delinquent based on a finding that he committed the offense of evading arrest with serious bodily injury. *See* Tex. Penal Code Ann. § 38.04 (West 2003). The juvenile court placed B.J.J. on twelve months' probation in the custody of his grandmother. In two points of error, B.J.J. urges that the evidence is legally and factually insufficient to show that he evaded arrest as found by the court. We overrule these points and affirm the juvenile court's judgment.

Austin Independent School District Police Officer Malcolm Monroe testified that on January 22, 2007, he was on duty in uniform at Reagan High School. On that day, a juvenile probation officer came to the school with a warrant for B.J.J.'s arrest. Following the established protocol, Monroe went to B.J.J.'s classroom, spoke to his teacher, and took him from the class. Monroe described what happened next, in the hallway just outside the classroom: "I informed [B.J.J.] that . . . his probation officer was there to get him, he had a warrant for his arrest. I placed one arm on one of his shoulders and put him up against the wall. And that's when he turned around,

pushed—like double punched me. I had to step like a couple of steps back, and that's when he took off running." Describing his training for these situations, Monroe said, "We turn them around, put them against the wall. When I was reaching for my handcuffs, that's when he turned around and did the double punch and took off running." Monroe said that it was "likely" that he told B.J.J. to turn and put his hands on the wall because, "That's what we normally say."

B.J.J. testified that when he and Monroe stepped into the hallway, the officer grabbed his hand and put it on the wall. B.J.J. asked what was going on, and the officer told him that he had a warrant for his arrest. B.J.J. said, "[A]fter he told me that, I just looked at the double doors and then I ran." He denied hitting Monroe.

B.J.J. ran to the nearest stairwell, pursued by Monroe. B.J.J. jumped down the first flight of stairs to a landing, and Monroe did the same. When he landed, Monroe immediately felt a pain in his legs and fell as B.J.J. continued to run away. Monroe testified that he broke bones in his left ankle, right leg, and right wrist.

B.J.J. contends that the evidence is legally and factually insufficient to support the court's finding that he committed the offense of evading arrest. Instead, he argues that the evidence shows that he was guilty of escape. A person is guilty of evading arrest "if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." *Id*. § 38.04(a). A person is guilty of escape if, among other things, "he escapes from custody when he is . . . under arrest for, charged with, or convicted of an offense . . . [or] in custody pursuant to a lawful order of a court." *Id*. § 38.06 (West Supp. 2007). B.J.J. argues that he was under arrest and in

2

custody when he was led out of the classroom and physically placed against the wall. Therefore, he urges that he was escaping from custody, not evading arrest, when he ran from the officer.

This Court has previously discussed the distinction between evading arrest and escape. In *Medford v. State*, a police officer, believing that Medford matched the description of a person for whom an arrest warrant had been issued, approached Medford and asked him to identify himself. 990 S.W.2d 799, 802 (Tex. App.—Austin 1999), *vacated and remanded*, 13 S.W.3d 769 (Tex. Crim. App. 2000). Because it was after dark and in a dangerous part of town, the officer frisked Medford for weapons and discovered a matchbox containing crack cocaine. *Id*. The officer told Medford he was under arrest and instructed him to place his hands behind his back. *Id*. The officer touched Medford's left arm with his hand and was about to handcuff him when Medford lunged free and began to run. *Id*. Refusing to equate "custody" with "seizure" under the Fourth Amendment, we held that Medford was not in custody when he fled from the officer, reversed his conviction for escape, and rendered a judgment of acquittal. *Id*. at 810-11. We observed that Medford "apparently committed the offense of evading arrest." *Id*. at 811.

After granting the State's petition for discretionary review, the court of criminal appeals wrote an opinion that was largely consistent with ours. *Medford v. State*, 13 S.W.3d 769 (Tex. Crim. App. 2000). The court wrote:

> An arrest of a person carries with it an element of detention, custody or control of the accused. The mere fact that an officer makes the statement to an accused that he is under arrest does not complete the arrest. *There must be custody or detention and submission to such arrest*.

3

*Id*. at 772-73 (quoting *Smith v. State*, 219 S.W.2d 454, 456 (Tex. Crim. App. 1949)).  An arrest must be complete in order to distinguish the offense of escape from the offense of evading arrest. *Id*. at 773.

> For purposes of the escape statute, an "arrest" is complete when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority. Furthermore, an arrest is complete only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." . . .  It is necessary . . . to focus the fact finder's application of the reasonable person standard *into the context of an arrest* to prevent a conviction based upon some less intrusive type of seizure.

*Id*. (quoting *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988)).

On remand, we concluded that the officer's stop-and-frisk of Medford constituted a detention, but not a completed arrest, and that a reasonable person would not have understood himself to be restrained to the degree the law associates with a formal arrest. *Medford v. State*, 21 S.W.3d 668, 670 (Tex. App.—Austin 2000, no pet.).  The officer's announcement that Medford was under arrest did not in itself complete the arrest. *Id*.  The officer was unable to complete the arrest by successfully restricting or restraining Medford's liberty of movement before Medford fled. *Id*.  We again reversed Medford's conviction for escape and rendered an acquittal. *Id*.

The court of criminal appeals has recently reaffirmed its holding in *Medford*. *See Warner v. State*, No. PD-1644-06, 2008 Tex. Crim. App. LEXIS 822 (Tex. Crim. App. July 2, 2008). The court wrote that in the context of a prosecution for escape following arrest, "escape can occur only after an officer *has* successfully restrained or restricted a suspect—that is, when the officer's

grasp has amounted to an arrest. *Id.* at *11. To hold otherwise would ignore the distinction the legislature has made between the offense of escape and the offenses of evading arrest . . . and resisting arrest . . . ." *Id.* (footnote omitted). In *Warner*, the court concluded that a suspect who broke away from the grasp of an officer (who was reaching for his handcuffs) after being told that he was under arrest was not guilty of escape because he had not been successfully restrained by the officer before he fled. *Id.*

In this case, Monroe detained B.J.J. by taking him from his classroom into the hallway and having him stand against the wall. Although B.J.J. submitted to this detention, the detention was not a completed arrest for the purposes of the escape statute, and a reasonable person in B.J.J.'s position would not have understood himself to be restrained to the degree the law associates with a formal arrest. Further, Monroe's statement that he had a warrant for B.J. J.'s arrest did not complete the arrest. Like the defendants in *Medford* and *Warner*, B.J.J. fled before Monroe could complete the arrest by restraining him to the degree required for an escape conviction.

Viewing the evidence in the light most favorable to the juvenile court's judgment, we conclude that the evidence supports the finding that B.J.J. intentionally fled from a person he knew was a peace officer who was attempting to lawfully arrest him. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (legal sufficiency standard of review). Viewing the evidence neutrally, we note that B.J.J. disputed Monroe's account only with respect to the question of whether he struck the officer before running. The evidence is factually sufficient to sustain the finding that B.J.J. was guilty of evading arrest. *See Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App.

2006) (factual sufficiency standard of review).  Under either standard of review, the evidence does not support B.J.J.'s contention that he was guilty of escape rather than evading arrest.

We overrule the points of error and affirm the judgment of the juvenile court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   July 9, 2008

6