

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NOS. 02-10-00267-CR**
**02-10-00268-CR**
**02-10-00269-CR**

LESLIE WALLACE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two points, Appellant Leslie Wallace appeals the trial court's denial of his motion to suppress in his convictions for assault against a public servant, tampering with physical evidence, and possession of a controlled substance, and

---

[1]*See* Tex. R. App. P. 47.4.

he challenges the sufficiency of the evidence to support his assault against a public servant conviction. We affirm.

## II. Factual and Procedural Background

The State charged Wallace with assault against a public servant, possession of a controlled substance (cocaine) of less than one gram, and tampering with physical evidence (cocaine). Wallace moved to suppress all of the evidence discovered after a traffic stop, and the trial court denied the motion, found Wallace guilty of all three charges, and sentenced him to seven years' confinement each for the tampering and assault convictions and to twenty months' confinement for the possession conviction, to be served concurrently.

Wallace requested that the trial court make findings of fact and conclusions of law. In response, the trial court made the following findings of fact:

1.     On or about February 16, 2008, at around 6:00 a.m.[,] Officer Olson and Officer Collins both of the Denton Police Department were dispatched to 239 Mockingbird Lane, Denton, Texas. Officer Olson and Officer Collins made contact with Laurie McClung at this address. Laurie McClung and her daughter [K.M.] both resided at this address. Officer Olson and Officer Collins both testified at the suppression hearing. Officer Collins and Officer Olson testified that they were told that the Defendant had touched [K.M.] in a sexual manner inside this residence during the early morning hours of February 16, 2008. Officer Collins testified that after speaking to Laurie McClung that he believed there was reasonable suspicion to believe that the Defendant had committed the offense of Indecency with a Child. Officer Collins testified that he was told by Laurie McClung that the Defendant had touched [K.M.'s] "butt" that evening. Officer Collins also testified that [K.M.] told him that the Defendant touched her and that she saw the Defendant use the restroom.

2

2.      Officer Collins also spoke to C.J. Batiste.  At the time, Mr. Batiste was Laurie McClung's boyfriend and he also resided in the residence.  While speaking with Mr. Batiste and Laurie McClung, Officer Collins was given a description of the Defendant's vehicle. Officer Collins was under the belief that the Defendant would be driving back to the location of the residence, because Mr. Batiste had called the Defendant after the Defendant left the residence and asked the Defendant to return.  Based on the information that Officer Olson and Officer Collins obtained, Officer Olson gave the Denton Police Department dispatch unit the description of the Defendant's vehicle, told dispatch that the Defendant was driving the vehicle, and the area in which the Defendant would be located.

3.      The Court finds the testimony of Officer Olson to be credible and convincing.  The Court finds the testimony of Officer Collins to be credible and convincing.

4.      Officer Cose of the Denton Police Department also testified at the suppression hearing.  Officer Cose was working patrol during this time, and he was driving a Denton Police Department patrol vehicle.  Denton Police Officer Sween[e]y was riding in the patrol vehicle with Officer Cose.  Officer Cose was informed by dispatch that the Defendant's vehicle would be in the area of 239 Mockingbird Lane.  Shortly after hearing the dispatch information, Officer Cose saw the Defendant's vehicle near the intersection of East McKinney St. and Mockingbird Ln.  This location is near and in the area of 239 Mockingbird.  Officer Sweeney also testified that the Defendant's vehicle was headed back in the direction that dispatch informed it would be heading.  Officer Cose initiated a traffic stop of the Defendant's vehicle.  During the traffic stop, Officer Cose made contact with the Defendant.  The Defendant told Officer Cose that he did not have his driver's license with him.  Therefore, the Defendant did not provide Officer Cose with his driver's license.  Officer Cose also noticed that the motor vehicle inspection sticker on the Defendant's vehicle had expired.  Officer Cose arrested the Defendant for failure to display a driver's license and for an expired motor vehicle inspection [sticker].  The Defendant was then driven to the Denton City Jail.

5.      The Court finds the testimony of Officer Cose to be credible and convincing.  The Court also finds the testimony of Officer Sweeney to be credible and convincing.

3

6.  While at the Denton City Jail during the arrest and book-in process, the Defendant was searched by Detention Officer Stevenson.  During the search of the Defendant[,] a crack rock-like substance fell out of the pocket of the clothing that the Defendant was wearing.  This occurred in the presence of Officer Stevenson and Officer Sweeney.  Officer Sweeney placed the "crack rock" in a plastic bag on the counter.  Moments later[,] the Defendant grabbed the plastic bag and attempted to swallow it while running away from the officers.  Officer Sweeney and Officer Stevenson took the Defendant to the ground.  Officer Sweeney was wearing gloves, and he attempted to get the Defendant to spit the bag out.  Officer Sweeney's finger was in the Defendant's mouth at some point during this incident, and the Defendant bit Officer Sweeney's finger.  Officer Sweeney and Officer Stevenson and several other Denton Police Officers finally restrained the Defendant.  Officer Keith Martin of the Denton Police Department ran into the jail upon hearing a call for help.   Officer Martin testified that the Defendant was so combative that Officer Martin had to use his "taser" and apply a "drive stun" to the Defendant in order to get the Defendant under control.  The Defendant was brought under control and was then placed in a "detox" cell in the jail.  The bag with the "crack rock" was not recovered at this point.  Several minutes later, Denton Police Officer Deweber walked by the Defendant's cell and saw the Defendant with what looked like a bloody paper towel in his hand.  Officer Deweber testified that once the Defendant saw that Deweber was looking at him, that the Defendant pushed the "paper towel" back into his mouth.  Officers Deweber and Sweeney along with other officers entered the Defendant's cell and restrained the Defendant.  Officer Deweber was yelling at the Defendant to spit the bag out.  Officer Deweber testified that the Defendant was combative.  Officer Sweeney testified that the Defendant attempted to bite him.  During this struggle in the cell, Officer Deweber used his taser gun to apply a drive stun to the Defendant.  Officer Deweber testified that the Defendant began choking, and that as a result that an officer performed the Heimlich maneuver on the Defendant.  The Defendant was then taken to Denton Regional Medical Center.

7.  The Court finds the testimony of Officers Stevenson, Martin[,] and Deweber to be credible and convincing.

8.  Officer Deweber rode with the Defendant in an ambulance to Denton Regional Medical Center.  Officer Deweber testified that while the Defendant was lying down at Denton Regional Medical

4

Center that the Defendant spit out of his mouth a bloody plastic bag along with blood onto the floor. The Defendant spit the bloody plastic bag along with blood onto the floor completely on his own. No force was used against the Defendant at Denton Regional Medical Center. A nurse put the plastic bag into another plastic bag and handed it to Officer Deweber. The contents of the bloody bag were later tested, and it was confirmed that the contents of the bloody bag were cocaine.

9. At no time did anyone attempt to place any instruments into the defendant's mouth. No one ever put anything deep into the defendant's mouth or down his throat. The police did nothing more than attempt to grab the bag out of the defendant's mouth.

The trial court made the following conclusions of law:

1. The Court finds that Officer Cose had reasonable suspicion to initiate the traffic stop of the Defendant's vehicle based on the information that had been provided to Officer Olson and Officer Collins and relayed by the officers.

2. The Court finds that Officer Cose had probable cause to arrest the Defendant for the offense of Failure to Display Inspection Certificate. *Tex. Transp. Code Ann. § 548.602*. The Court also finds that Officer Cose had probable cause to arrest the Defendant for [the] offense of Failure to Display a Driver's License. *Tex. Transp. Code Ann. § 521.025*.

3. The Court finds that none of the law enforcement officers conducted or attempted to conduct any unreasonable search or seizure. The Court further finds that the Defendant spit out the bloody bag and its contents at Denton Regional Medical Center on his own. The Court finds that Officer Deweber's gaining possession of the bloody bag and its contents were not the result of any search.

These appeals followed.

## III. Discussion

In his first point, Wallace complains that trial court erred by denying his motion to suppress, arguing that the police officers had no reasonable suspicion

5

to initially stop and detain him so all evidence procured after the stop should have been suppressed and that his subsequent search and seizure at the jail was unreasonable and intrusive. In his second point, Wallace challenges the sufficiency of the evidence to support his conviction of assault against a public servant.

## A. Preservation of Error

In part of his first point, Wallace contends that K.M.'s outcry lacked a solid identification of him as the perpetrator and was insufficient to originate the "BOLO"[2] issued by Officer Olson and to stop him. The State responds that Wallace did not preserve this argument because it does not comport with the one he made in the trial court.

At trial, Wallace argued as follows after Officers Collins and Cose testified:

> I would move to suppress all the evidence subsequent to the traffic stop. It's an illegal detention. They didn't have enough reasonable suspicion to make that stop even briefly.
>
> *They knew who the person was*. That they didn't need for identification purposes. *They had already named the person*. [C.J.] had even actually called him on the phone. So there was no issue about any flight.
>
> They could have obtained a warrant based on the information they had or on information that they could have investigated and compiled. They didn't do that. Yet they arrested this man on the street and didn't notice any violations until after his movement had been ceased. He had been seized, arrested, not free to leave according to the officer who pulled him over. It wasn't until after he

---

[2]"BOLO" is an acronym for "be on the lookout." *Amores v. State*, 816 S.W.2d 407, 424 n.17 (Tex. Crim. App. 1991).

6

did that that he discovered that he didn't have a driver's license or any identification, and then it was subsequent— . . .

[H]e didn't realize that there was an expired motor vehicle inspection until after he had pulled him over. And, Judge, I think we have an illegal detention here, and I would ask for you to suppress all the evidence subsequent to that. [Emphasis added.]

The State then responded that there was sufficient evidence to support reasonable suspicion for the stop based on the information the officers gathered from the seven-year-old child and her mother. At the close of evidence, with regard to the initial stop, Wallace again argued, "The officer at the time of the stop didn't have reasonable suspicion or enough articulable facts to continue the detention or to even detain him to begin with, to stop him initially. And I would just ask you to reconsider your previous ruling on that issue."[3]

The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."); *see* Tex. R. App. P. 33.1. To determine whether the complaint on appeal comports with that made at trial, we consider the context in which the complaint was made and the parties' shared

---

[3]Wallace did not file a written motion to suppress.

understanding at that time. *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464. A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

Because Wallace's complaint on appeal about identification does not comport with the one he raised at trial, we overrule this portion of his first point.[4]

## B. The "Second" Search

Wallace also argues that the "second" search—"the subsequent expulsion of rock cocaine"—was unreasonable because it was conducted in a very violent manner in an unsanitary place when the officers "wrestl[ed] around" with him in the detox cell and then stunned him with a taser. The State responds that the cocaine was obtained by a nurse after Wallace coughed it up at the hospital on

---

[4]Further, based on the information known to the police officers at the time, Officers Cose and Sweeney had reasonable suspicion to stop Wallace's vehicle. Officer Olson issued the description of Wallace's vehicle to dispatch after he and Officer Collins spoke with the complainant, her mother, and her mother's boyfriend, who identified Wallace as the individual who touched the complainant "on her butt" that day and described Wallace's vehicle. And Officers Cose and Sweeney heard the dispatch about the suspect of the indecency with a child offense and stopped Wallace's vehicle, which matched the description in the dispatch, while he was on his way back to the scene. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (stating that reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person has been engaged in criminal activity); *see also Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.), *cert. denied*, 132 S. Ct. 150 (2011) (stating that the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists).

his own, attenuating any taint from any alleged police misconduct. *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S. Ct. 407, 417 (1963); *see also Crosby v. State*, 750 S.W.2d 768, 780 (Tex. Crim. App. 1987) ("[E]ven assuming the acquisition of the indirectly acquired evidence was illegal it should not be excluded if it was obtained independent of the initial illegality."), *cert. denied*, 486 U.S. 1055 (1988). If there are satisfactory intervening events that attenuate the taint of the initial illegality, then the indirectly obtained evidence will usually be deemed admissible. *Crosby*, 750 S.W.2d at 780 (citing *Miller v. State*, 736 S.W.2d 643, 651 (Tex. Crim. App. 1987) (op. on reh'g)).

The record, which supports the trial court's fact findings set out above, reflects that during the book-in process, a detention officer was searching Wallace when a white, rock-like substance fell from Wallace's sweatshirt pocket onto the book-in counter. Officer Sweeney retrieved the substance, which he believed to be crack cocaine based on its appearance,[5] put it in an evidence bag, and set the bag on the other side of the counter before starting to read Wallace his *Miranda* warnings.

When Officer Sweeney paused to ask Wallace if he understood his rights, Wallace reached over the counter, grabbed the bag, and tried to run away while stuffing the bag into his mouth. Officer Sweeney grabbed Wallace but was unsuccessful in trying to stop him from swallowing the bag. Officer Sweeney

---

[5]The parties stipulated that the item contained a trace amount of cocaine.

9

said that swallowing crack cocaine could be fatal, as could choking on a plastic bag; that Wallace was "in a rage," swinging his arms and trying to get away; and that five or six officers were needed to subdue him. Officer Keith Martin described Wallace as combative and out of control, and he stunned Wallace with a taser after warning him several times that he would stun him if Wallace did not put his arms behind his back. Wallace was stripped of his clothing, placed in a detox cell, and given an orange cell suit. Officer Sweeney said that Wallace was placed in a detox cell because of his combativeness. The rock was not recovered at that time.

Officers subsequently saw Wallace holding something in the detox cell, and when Wallace noticed this, he shoved the item in his mouth. Another altercation ensued. Officer Deweber testified that Wallace tried to bite Officer Sweeney during the struggle and that he had to tase Wallace three times. Officer Sweeney said Wallace tried to bite him again. After Officer Deweber stunned Wallace, Wallace began to choke, and Officer Cose performed the Heimlich maneuver. The rock was not recovered at that time.

Officer Deweber accompanied Wallace to the hospital because Wallace had been combative. Wallace started coughing as he was rolled into a hospital room. Officer Deweber testified that Wallace "threw up a big pile of blood, and in the middle of the blood was a plastic bag," which landed on the floor of the hospital. A nurse bagged the item in a biohazard bag and gave it to Officer Deweber.

As noted by the trial court, nothing in the record indicates that anyone ever tried to place any instruments in Wallace's mouth or down his throat or that anyone did anything more than attempt to get the bag out of Wallace's mouth, both to keep him from choking and to preserve it as evidence. The trial court concluded that none of the law enforcement officers conducted or attempted to conduct any unreasonable search or seizure, that Wallace spit out the bloody bag and its contents at the hospital on his own, and that Officer Deweber gained possession of the bloody bag and its contents without a search. We agree because it is clear from the record that the police officers' second failed attempt to recover the evidence had ceased by the time Wallace left for the hospital, was wheeled into a hospital room, and literally purged himself of the evidence; then, a nurse wearing gloves picked up the evidence, bagged it, and handed it to Officer Deweber. *See Crosby*, 750 S.W.2d at 780.

Because any alleged police misconduct had ceased by the time Wallace reached the hospital, we reach the same conclusion that the trial court did: that Officer Deweber's gaining possession of the evidence was not the result of any search. *Cf. Hereford v. State*, 339 S.W.3d 111, 114, 123–25, 126 (Tex. Crim. App. 2011) (noting that Officer Arp used excessive force when he deliberately chose to administer numerous electrical shocks to appellant's groin area in his attempt to make appellant relinquish the crack cocaine in his mouth long after the initial arrest was made and when there was no ongoing attempt by appellant to destroy the evidence, there was little concern of a drug overdose, and appellant

11

was restrained in handcuffs behind his back); *Davis v. State*, No. 04-10-00632-CR, 2011 WL 4088449, at *4–5 (Tex. App.—San Antonio Sept. 14, 2011, no pet.) (mem. op., not designated for publication) (distinguishing *Hereford* and concluding that officer's action in seizing cocaine was reasonable when officer saw appellant place drugs in his mouth and grabbed appellant, applied pressure to appellant's jaw while ordering him to open his mouth—in compliance with what he was taught at the police academy—and, within moments of applying pressure, successfully recovered one of the packages from appellant's mouth by scooping it out with his pen). We overrule the remainder of Wallace's first point.

## C. Sufficiency

Wallace argues that the evidence was insufficient to support his conviction of assault against a public servant because he had already been arrested by the time he bit Officer Sweeney. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Wallace was charged with assaulting a public servant by intentionally, knowingly, or recklessly causing bodily injury to Marc Sweeney, a person Wallace knew to be a public servant, by biting him while he "was then and there lawfully discharging an official duty, to-wit: making an arrest." *See* Tex. Penal

12

Code Ann. § 22.01(a)(1), (b)(1) (West 2011) (stating that the offense is a third-degree felony if the offense is committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty).

"[W]here the original arrest is lawful[,] the arresting officer is authorized to make an additional arrest for any other offense unexpectedly discovered during the course of investigation and incident to the newly discovered offense conduct an additional search for physical evidence." *Byrd v. State*, 447 S.W.2d 936, 937 (Tex. Crim. App. 1969). Further, within the context of the escape statute, the court of criminal appeals has stated that an "arrest"

> "is complete when a person's liberty of movement is *successfully* restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority. Furthermore, an arrest is complete only if 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'"

*Warner v. State*, 257 S.W.3d 243, 247 (Tex. Crim. App. 2008) (emphasis added) (quoting *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000)); *cf.* Tex. Code Crim. Proc. Ann. art. 15.22 (West 2005) (stating that a person is arrested "when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant"). The terms "arrest" and "custody" are not interchangeable; rather, "arrest" is "a subset of custody," *Warner*, 257 S.W.3d at 247, and "effecting an arrest" entails a process or transaction with a beginning and an end. *Lewis v. State*, 30 S.W.3d 510, 512 (Tex. App.—Amarillo 2000, no

13

pet.) (discussing sufficiency in the context of a resisting arrest conviction under penal code section 38.03). An officer no longer effectuates an arrest once his efforts to actually restrain or control the suspect are completed. *Id.* (citing *Bruno v. State*, 922 S.W.2d 292, 294 (Tex. App.—Amarillo 1996, no pet.); *Schrader v. State*, 753 S.W.2d 733, 735 (Tex. App.—Austin 1988, pet. ref'd)). "The legislature intended the expression 'effecting an arrest' to encompass the reasonable actions or process of a peace officer bringing a person under the officer's control for purposes of the law." *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.) (discussing penal code section 38.08).

Officer Cose testified that he arrested Wallace for failure to identify and for having an expired inspection sticker, placed him in handcuffs, and took him to jail. Officer Sweeney, who was with Officer Cose when he stopped Wallace, agreed that Wallace was arrested at the scene for these offenses, and he agreed during cross-examination that Officer Cose made the arrest by handcuffing Wallace, putting Wallace in the patrol car, and making it obvious that Wallace was not free to leave. Officer Sweeney also agreed that Wallace did not resist or assault him at that point, that Wallace had already been arrested at the time he resisted the officers' attempts to seize the evidence from him, and that Officer Cose wrote the arrest report because he was the arresting officer. Therefore, it is undisputed that Wallace had been arrested for not having a driver's license and for having an expired inspection sticker by the time he was being booked-in at the jail. *See Warner*, 257 S.W.3d at 246; *Lewis*, 30 S.W.3d at 512.

14

However, at that point, Wallace had not yet been found to have committed possession of a controlled substance, and he had not yet committed tampering with evidence, so he could not have been under arrest or in custody for either of these offenses. Rather, as set out above, Wallace was being booked-in under the initial arrest when the crack rock was discovered and when he grabbed the crack rock in its evidence bag and tried to swallow it while attempting to flee. He became combative and out of control, and Officer Deweber said that when he arrived to help subdue Wallace, officers were trying "to place [Wallace] back into handcuffs."

Wallace bit Officer Sweeney while Officer Sweeney attempted to re-apprehend him and to stop him from swallowing the bag containing the crack rock. That is, when the bite occurred, Officer Sweeney was trying to restrict or restrain Wallace's liberty *again*, and he could do so within the context of the new offenses that had been committed in his view. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005); *Byrd*, 447 S.W.2d at 937; *see also Warner*, 257 S.W.3d at 247 (noting statutory distinctions between the offenses of escape, evading arrest, and resisting arrest, which are offenses a person commits when an officer has not successfully restrained or restricted a suspect); *Polk v. State*, 170 S.W.3d 661, 664 (Tex. App.—Fort Worth 2005, pet. ref'd) (noting that the invocation of an appellant's right to remain silent is case-specific and related only to the offenses for which he is arrested). Therefore, we conclude that Wallace bit Officer Sweeney while he was making a second arrest for the offenses Wallace

15

committed at the police station and that the evidence is therefore sufficient to support Wallace's conviction for assault against a public servant. We overrule Wallace's second point.

## IV. Conclusion

Having overruled both of Wallace's points, we affirm the trial court's judgments.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 15, 2011