**Affirmed and Memorandum Opinion filed May 29, 2014.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-12-00429-CR**
**NO. 14-12-00432-CR**

---

**CHARLES ALLEN DONELLY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 435th District court**
**Montgomery County, Texas**
**Trial Court Cause Nos. 11-12-13328-CR and 11-12-13327-CR**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Charles Allen Donelly, of sexual assault (Appeal No. 14-12-00429-CR, Trial Court Cause No. 11-12-13328-CR) and felony escape (Appeal No. 14-12-00432-CR, Trial Court Cause No. 11-12-13327-CR). Appellant pled true to seven enhancement paragraphs, the jury found the paragraphs true and assessed his sentence at confinement for life for the offense of sexual assault and 99 years for the offense of escape; the sentences are to run

concurrently. Appellant brings two issues in this appeal complaining of the sufficiency of the evidence to support his convictions.

## I. BACKGROUND

C.S. met appellant online. She was fifteen years of age and he was 47. They met in person and appellant tried to convince C.S. to have sex with him. About a week later they met again on the shore of Lake Conroe and had intercourse. They decided to move to a more secluded area; C.S. drove a golf cart and appellant followed her in his truck.

United States Forest Service Officer Joseph McGallicher was on patrol in the Sam Houston National Forest when he initiated a traffic stop on the golf cart for operating an unregistered vehicle on a public roadway. Officer McGallicher requested and received the driver's license of the person driving the truck — it was appellant. Officer McGallicher asked appellant if he and the female were together and appellant said that she was showing him around the area. The driver of the golf cart identified herself as C.S. and said she was 15 years old and did not have a driver's license.

C.S. then stated that she was glad the officer had stopped her because appellant "had made unwanted sexual advances towards her." Officer McGallicher ordered appellant out of his truck, placed him in handcuffs, and stated that he was detaining him. Officer McGallicher ordered appellant to sit on the tailgate of his truck. As Officer McGallicher walked away appellant said, "She told me she was 18."

C.S. appeared distraught and was shaking. She told Officer McGallicher that appellant had come up to her on the Conroe lakefront beach and assaulted her.

2

Officer McGallicher called for assistance and Montgomery County Sheriff's Deputy Bourne was dispatched to the location.

Meanwhile, C.S. informed Officer McGallicher that she was experiencing vaginal pain. Officer McGallicher contacted her mother and an ambulance was called out due to C.S.'s statement that she was in pain. Officer McGallicher testified that appellant's view was not blocked from seeing the arrival of the ambulance.

Officer McGallicher testified that he intended for Deputy Bourne to take appellant back to the Montgomery County Jail for questioning while he attempted to recover a used condom from the area where C.S. alleged the sexual assault had occurred. In the meantime, appellant's truck was inventoried and a letter written by C.S. was discovered. The letter expressed C.S.'s desire to lose her virginity to appellant. Appellant had been moved to the backseat of Deputy Bourne's patrol car, where he remained handcuffed. After the inventory of appellant's truck was completed, Officer McGallicher left the scene of the traffic stop and returned to the location C.S. alleged the assault had occurred. Deputy Bourne followed Officer McGallicher to the location in his patrol car, with appellant still in the backseat. C.S. took Officer McGallicher to where the alleged assault had occurred and showed him an area of matted-down grass where she alleged they had lain down.

Deputy Bourne was waiting in his patrol car with appellant but became concerned when C.S. reappeared without Officer McGallicher. Bourne and Sergeant Ward, who was also at the scene, went looking for Officer McGallicher. When they saw him, Deputy Bourne turned and walked back towards his car. Deputy Bourne heard glass break and began running. When Deputy Bourne arrived at his patrol car, appellant was gone.

3

Officer McGallicher heard Deputy Bourne shouting. When Officer McGallicher approached the rear of Deputy Bourne's patrol car, he saw the back side window of the car was broken out and appellant was gone. Officer McGallicher immediately informed Texas Ranger Doolittle of the situation and a search was conducted. Appellant was later apprehended.

## II.    FELONY ESCAPE

Appellant's first issue asserts the State failed to prove that he was lawfully under arrest for a felony. Appellant contends the evidence only supports a finding that he had been lawfully detained for investigation.

### A. Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). In conducting our review, we resolve any inconsistencies in the evidence in favor of the verdict. *Crawford v. State,* 889 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1994, no pet.).

### B. The Law of Arrest

Under the statute in effect at the time of this offense, a person commits an offense if he escapes from custody when he is under arrest for an offense. Act of

4

June 15, 2007, 80th Leg., R.S. ch. 908, 2007 Tex. Gen. Laws 2290.[1]  A completed arrest distinguishes the offense of escape from the offenses of evading or resisting arrest.  *Sample v. State*, 292 S.W.3d 135, 137, n. 1 (Tex.App.—Houston [14th Dist.] 2008, pet. ref'd.) (citing *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000)).  An arrest is complete for purposes of the escape statute (1) when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to authority; and (2) if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.  *Warner v. State*, 257 S.W.3d 243 (Tex. Crim. App. App. 2008) (quoting *Medford*, 13 S.W.3d at 773).  "Because the occurrence of an arrest cannot be determined by any bright-line test, whether an arrest has occurred must be determined on a case-by-case basis by examining the totality of the circumstances."  *Sample,* 292 S.W.3d at 137.  In addition, "what may begin as a consensual encounter … may evolve into an arrest."  *Josey v. State*, 981 S.W.2d 831, 838 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd.) (quoting *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996) (Baird, J., concurring and dissenting)).

To effectuate a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense.  *See Amores v. State,* 816 S.W.2d 407, 411 (Tex. Crim. App. 1991).  Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has

---

[1] Effective September 1, 2011, the statute changed to include persons who escaped while in custody when the person is "lawfully detained for" an offense.  *See* Tex. Pen. Code § 38.06(a)(1) (West Supp. 2013).

been or is being committed. *Id.* at 413. Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or to support a finding by a preponderance of the evidence. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).

## C. Was Appellant Under Arrest?

Officer McGallicher testified that when he placed appellant in handcuffs, he informed appellant that he was being detained. The State concedes that appellant's initial detention in handcuffs does not rise to the level of arrest. However, the State urges that by the time of the escape, a reasonable person would conclude he was under arrest. We agree.

We turn first to the evidence of probable cause to arrest. When Officer McGallicher ordered appellant to sit on the truck's tailgate, as he walked away appellant said, "She told me she was 18." Officer McGallicher testified that statement from appellant, along with C.S.'s statements, gave him probable cause to arrest appellant. According to Officer McGallicher, probable cause arose about forty minutes after initial contact with appellant. Officer McGallicher testified that he believed the actual arrest took place at that time. Officer McGallicher knew: C.S. was driving a golf cart and appellant was following her; C.S. was fifteen – a minor; appellant was forty-seven; C.S. stated that appellant had forced sex upon her; C.S. was visibly shaking; and, unsolicited, appellant uttered the words "She told me she was 18." We conclude that the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, were sufficient to warrant a person of reasonable caution to believe an offense has been or is being committed. *Amores,* 816 S.W. at 413.

We now examine whether a reasonable person in appellant's position would have understood that he was under arrest. *Medford*, 13 S.W.3d at 773. Appellant

6

relies heavily upon Officer McGallicher's repeated use of the word "detained" instead of "arrested" on the scene prior to Appellant's escape. Specifically, Officer McGallicher agreed that he said appellant was detained seven times during his investigation. While appellant was sitting on the back of the truck, Officer McGallicher stated to other law enforcement personnel that appellant was not under arrest and that he was not going to Mirandize him. Two hours later, Officer McGallicher again said appellant was not under arrest but was being detained.

However, we do not measure appellant's status from the officer's point of view. Therefore, we note that of the times that Officer McGallicher said "detained," only once did he use the word "detained" when speaking to appellant. Officer McGallicher testified that he only spoke to appellant twice, once when he got appellant out of the truck and placed him in handcuffs, and again when he told appellant to stay on the tailgate. At all other times Officer McGallicher used the word "detained" it was in speaking to other people. We decline Appellant's invitation to hold that Officer McGallicher's repeated use of the word "detained" is dispositive of what a reasonable person in appellant's position would believe.

Instead, applying the standard of review, we examine the totality of the circumstances from appellant's perspective. We begin at appellant's initial detention. From appellant's perspective at the moment of the alleged escape:

    1. He is forty-seven years' old;

    2. He has been stopped while driving his Nissan truck and following a young girl driving a golf cart;

    3. Although he has explained that the young girl, C.S., is showing him around the area, he is asked to step out of his truck and advised the officer is "detaining him there until [he] could figure out what was going on";

    4. He has been handcuffed, and ordered to sit on the tailgate of his truck;

    5. He observes and possibly hears the conversation between Officer

7

McGallicher and C.S;

6. Although he initially told the officer that C.S. was showing him around, appellant now makes the unsolicited statement, "She told me she was 18;"

7. After he makes this statement and observes the officer speaking to C.S., he is able to observe an ambulance arrive at the scene;

8. Other officers arrive at the scene and he is moved, still handcuffed, into the back of the patrol car of one of the new officers, where he remains for another hour;

9. He is in a position to observe his truck being inventoried and towed;

10. He is aware that C.S's letter is in his truck.

11. He is then driven, still in the back of the patrol car, to the scene of the alleged assault where he is able to observe Officer McGallicher and C.S. go down to the beach;

12. He is able to see that the ambulance has also gone to the scene of the alleged assault;

13. He cannot open the rear doors of the patrol car from inside.

From these facts and the inferences therefrom, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that a reasonable person in appellant's position would have understood that he was under arrest. *See Medford*, 13 S.W.3d at 773.

Appellant argues that this case is controlled by our decision in *Sample,* 292 S.W.3d at 135. Appellant characterizes our *Sample* decision as holding that when a defendant is placed in the back of the investigating officer's vehicle and an investigative detention occurs, defendant is not under arrest until he is specifically told he is under arrest. Instead, in *Sample* we held that the jury could rationally conclude appellant's arrest was legally complete at the moment he was informed that he was under arrest. *Id.* at 137. Such an unremarkable holding cannot be construed to suggest that an arrest cannot be legally complete until and unless the

8

defendant is informed that he is under arrest. *See Castillo v. State*, 404 S.W.3d 557, 563 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd) (holding that, although appellant was not told he was under arrest, as in *Sample*, the circumstances known to appellant were sufficient to prove he was legally under arrest). As in *Castillo*, appellant here was in possession of sufficient information as events unfolded following his initial detention that a reasonable jury could conclude that he knew the investigating officers had enough information to arrest him. Although not dispositive, appellant's blurting out that C.S. told him she was 18 is a significant factor showing appellant's state of mind.

Considering the evidence in the light most favorable to the verdict, we hold the evidence was legally sufficient to prove that appellant escaped from custody while under arrest and overrule appellant's first issue.

### III. SEXUAL ASSAULT

In his second issue, appellant claims the State failed to prove his sexual organ contacted the sexual organ of C.S. Specifically, appellant argues C.S. did not testify that she saw appellant's penis and there was no physical evidence corroborating her claim. Appellant cites no authority, and we are aware of none, that either is required for a rational fact finder to find the elements of sexual assault beyond a reasonable doubt.

When determining whether evidence is legally sufficient to support the verdict, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. at 318–19). A victim's uncorroborated testimony may support a conviction for sexual assault if, at the time of the alleged

9

offense, the victim was seventeen years of age or younger. *See* Tex. Code of Crim. Proc. art. 38.07(a), (b)(1).

At the time of the offense C.S. was fifteen. She testified appellant penetrated her vagina with his penis. We conclude a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Appellant's second issue is overruled.

## IV.   CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment in each case.

/s/     Sharon McCally
        Justice

Panel consists of Justices McCally, Busby, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).