**Carlos CASTILLO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–08–00188–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 7, 2010.

Dissenting Opinion April 7, 2010.

Discretionary Review Refused Aug. 25, 2010.

Don R. Cantrell, for Appellant.

Lana Shadwick, Charles A. Rosenthal, Jr., for the State of Texas.

Panel consists of Chief Justice RADACK and Justices SHARP and TAFT.*

## MEMORANDUM OPINION

TIM TAFT, Justice.

A jury convicted appellant, Carlos Castillo, of escaping from police custody. *See* TEX. PENAL CODE ANN. § 38.06(a)(1) (Vernon Supp.2009). The trial court assessed

punishment at 25 years' confinement. In three issues, appellant challenges the legal sufficiency of the evidence, specifically arguing that there was no evidence that he was arrested because he was neither handcuffed nor told that he was under arrest and because there was no evidence that appellant possessed a usable quantity of marihuana, *i.e.*, four ounces or more. We modify the judgment of the trial court and we affirm as modified.

## Background

In February 2007, an undercover police officer with the narcotics division of the Pasadena Police Department received an anonymous tip that a shipment of marihuana would be delivered to a certain address that same day. The officer drove past the address the informant had given him, recorded the license plate number of a vehicle parked in the driveway, and parked down the street to set up surveillance of the house. The officer determined that the vehicle parked in the driveway was registered to a man named "Jose," which the officer thought was consistent with the informants tip that the marihuana would be delivered to a man named "Joe."

Around 6:00 p.m., the undercover officer spotted appellant driving a maroon truck very slowly through the neighborhood, looking in every direction, even looking directly at the officer. Appellant left the truck running in the center of the street and went inside the house that the officer was watching. The officer saw appellant greet a Hispanic man at the door. While appellant was inside the house, the officer learned that the maroon truck was licensed to two people who lived in Edinburg, Texas, near the Mexican border. After about 20 minutes, appellant and the

---

* Justice Tim Taft, who retired from the First Court of Appeals effective June 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on May 26, 2009.

other man came out of the house, stood in the yard talking, and shook hands. Appellant went back to his truck and drove away; the other man returned to the house.

The undercover officer, who was working with a uniformed officer in a marked car, broadcast information about appellants truck and where it was headed. The undercover officer then drove around the corner, where he saw appellant park the maroon truck beside a house. After several minutes, a four-door, black pickup truck pulled into the driveway. Appellant left the maroon truck running and got out to greet the driver of the black truck. The two men shook hands and looked in the back of the black truck. The other man lifted up a tarp or covering, showing appellant something. The undercover officer testified at trial that appellant "appeared to be very jubilant. He was happy." The men replaced the covering, shook hands, and patted each other on the shoulder.

Appellant and another man each took a large, bulky object out of the truck and into the house, locking the black truck and arming the alarm system as they left. To the undercover officer, the object looked like a woven, plastic gunnysack with bright orange writing all over it. The officer could see that the object had rope handles, but he ruled out the possibility that it could be a suitcase. The men came out about 20 minutes later and got into the maroon truck where appellant sat in a passenger seat. The undercover officer contacted uniformed officer R. Carro, and followed the truck.

The undercover officer watched the maroon truck turn without signaling, and he shared this information with Officer Carro who then pulled behind the maroon truck. Officer Carro saw the maroon truck make another turn without using a turn signal, and he initiated a traffic stop with the undercover officers agreement.

Officer Carro observed that the driver was very nervous. When the driver rolled down the window, Officer Carro smelled the strong odor of burned marihuana emitting from the vehicle. Officer Carro did a pat-down search and felt something that he believed was a weapon, which turned out to be drug paraphernalia. Officer Carro arrested the driver for possession of drug paraphernalia.

When Officer Carro stopped the maroon truck, the undercover officer also pulled over. The undercover officer approached the truck from the passenger side, and he found appellant sitting in the rear passenger-side seat. The officer identified himself as a police officer and asked appellant for identification. The officer asked appellant background questions in English, and appellant responded in English. Appellant told the undercover officer that he had been visiting friends in Pasadena and had just come from a restaurant. Appellant denied ever having been on the streets in question. The undercover officer told appellant that he was investigating a marihuana case and that he had been watching appellant and knew that appellant did not just come from a restaurant. Although the undercover officer testified at trial that his unmarked car was not equipped with a video camera, he testified that he may have told appellant that he captured the entire transaction on videotape. The officer explained at trial that this sort of ruse is a commonly used investigatory technique.

The undercover officer asked appellant if he would return to the house where the black truck was parked to verify that he had never been there before, and appellant agreed to do so, riding over to the house in the back of a marked police car. The undercover officer testified at trial that

there is a steel barrier between the backseat and the front seat and that the back doors open only from the outside.

The house where the black truck was parked was about a minute away from where Officer Carro stopped the maroon truck. The undercover officer knocked on the front door, and the woman who opened the door gave consent to search the house and the truck, which she said she owned. As the undercover officer approached the black truck, he smelled the odor of green, unburnt marihuana. He lifted the blanket that he saw earlier and found large block objects in woven plastic gunnysacks, with orange, brown, and black printing on them. They were similar to the object that he saw appellant carry into the house earlier that evening. The officer opened one of the packages with a pocketknife, and he found a felony amount of marihuana.

The undercover officer then saw appellants reaction to his discovery:

As I walked away from the vehicle and was shutting the door and was going to go back inside the house, I actually was going to talk to Officer Carro and could see [appellant] through the glass of the vehicle.... He was paying very close attention to our activities. He was glaring out the window and he appeared like the wind had come out of your sails. I dont know how to describe it other than just slumped.... [H]e just was looking out the window and was just kind of slumped over, as before he was, you know sitting upright.

The undercover officer went back inside the house briefly, and when he came outside, appellant was not in the police car. Officer Carro testified that he saw the felony amount of marihuana in the black truck, and then he heard "glass breaking, a window being kicked out." When Officer Carro turned around, he saw appellant climbing out of the police car through the broken window. Officer Carro advised dispatch that appellant was running away, and he chased appellant, yelling stop at least seven times. At one point, Officer Carro had to stop chasing appellant to avoid being hit by oncoming traffic. Additional police officers, including a K–9 unit, responded to the scene and set up a perimeter to catch appellant. Appellant continued running away, crossing three lanes of highway traffic, jumping over a three-foot wall, and jumping 10 feet from the highway to the frontage road before being re-arrested by another police officer.

## Sufficiency of the Evidence

In his first issue, appellant contends that the evidence was legally insufficient to prove his escape conviction because he was never handcuffed or told that he was under arrest. Appellant argues that because he voluntarily got into the police car, he was not in custody, and he was merely being temporarily detained for investigation.

### A. Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State,* 175 S.W.3d 795, 798 (Tex.Crim.App.2005). The standard is the same for both direct and circumstantial evidence cases. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App.1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.

Crim.App.1991). In conducting our review, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843.

## B. The Law of Arrest

■ "A person commits an offense if he escapes from custody when he is ... under arrest for ... an offense." Tex. Penal Code Ann. § 38.06(a) (Vernon 2003). A completed arrest distinguishes the offense of escape from the offenses of evading or resisting arrest. *Sample v. State*, 292 S.W.3d 135, 137, n. 1 (Tex.App.Houston [14th Dist.] 2008, pet. refd.) (citing *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim.App.2000)). An arrest is complete when: (1) a persons liberty of movement is successfully restricted or restrained, either by an officers physical force or the suspects submission to the officers authority; and (2) if a reasonable person in the suspects position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. *Medford*, 13 S.W.3d at 773; *see* Tex.Code Crim. Proc. Ann. art. 15.22 (Vernon 2005) ("A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant.").

■ "Because the occurrence of an arrest cannot be determined by any bright-line test, whether an arrest has occurred must be determined on a case-by-case basis by examining the totality of the circumstances." *Sample*, 292 S.W.3d at 137. In addition, "what may begin as a consensual encounter ... may evolve into an arrest." *Josey v. State*, 981 S.W.2d 831, 838 (Tex.App.Houston [14th Dist.] 1998, pet. refd.) (quoting *Francis v. State*, 922 S.W.2d 176, 178 (Tex.Crim.App.1996) (Baird, J., concurring and dissenting)).

■ To effectuate a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense. *See Amores v. State*, 816 S.W.2d 407, 411 (Tex. Crim.App.1991). Probable cause to arrest exists when the facts and circumstances within the arresting officers knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed. *See id.* at 413. Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or to support a finding by a preponderance of the evidence. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). Probable cause may arise from information supplied by a confidential informant, provided the information is corroborated. *See Eisenhauer v. State*, 678 S.W.2d 947, 952 (Tex. Crim.App.1984).

## C. Under Arrest?

Here, the undercover officer received an anonymous tip that a man named Joe would receive a shipment of marihuana. This tip was corroborated, in part, by the undercover officers discovery that the vehicle parked in front of the house specified by the informant was registered to a man named Jose. The undercover officer followed appellant and watched him carry a package into a house, after inspecting the shipment of what was later determined to be marihuana in the black truck, shaking hands with the other man, and patting him on the shoulder. The appellant lied to the undercover officer about his having been at the house that was the target of the investigation. The undercover officer informed appellant that the officer was conducting a marihuana investigation, that he had been watching appellant, and that he

knew appellant had not just come from a restaurant as appellant claimed. When appellant agreed to return to the house to verify whether he had been there, the undercover officer placed appellant in the back of a police car that was fitted with a steel screen and that had a door that could only be opened from the outside.

Once back at the house, appellant watched the undercover officer approach the black truck and cut into a package similar to the one appellant had taken to the house earlier. After the undercover officer confirmed that the packages in the black truck were marihuana, he watched the appellant "glare" at him and then slump in his seat, a gesture that indicated appellants awareness that the officer had discovered the marihuana. Finally, neither the undercover officer nor any other officer ever told appellant that he was free to leave.

■ We agree with appellant to the extent that, when he initially entered the back seat of the patrol car, he was not in custody but was merely being temporarily detained for investigation. The question, however, is whether the temporary investigation of appellant had become a custodial arrest because of the development of probable cause to arrest appellant for possession of marihuana once the contents of the packages, similar to the one appellant had taken into the house, were established as felony amounts of marihuana. Because appellants liberty of movement was being restricted, the question is whether a reasonable person in appellants position would have understood that he was under arrest. *See Medford*, 13 S.W.3d at 773. While appellant was not expressly told by the officers that he was under arrest, as in *Sample*, we hold that a reasonable person in appellants position who: (1) had been informed that he was being taken back to the house for a marihuana investigation;

(2) had been told that the officers had observed him at the house (and, of course, he knew that he had taken a package containing marihuana from the black truck into the house); (3) had observed the officers discovery of the marihuana in similar packages in the black truck thereby producing the information necessary to arrest him; (4) had indicated by his body language his awareness that the officers had the information necessary to arrest him; and (5) was being detained in the back seat of a patrol car, would have understood the situation to constitute a restraint of freedom of movement to the degree which the law associates with formal arrest. *See id.*

Viewing the evidence in the light most favorable to the verdict, we hold that the evidence was legally sufficient to prove that appellant escaped from custody while he was under arrest, and we overrule appellants first issue.

## D. Possession

■ In his second and third issues, appellant contends that there is no evidence of his connection to the marihuana in the black truck, which is the only marihuana recovered, and that there is no evidence that he possessed a felony amount of marihuana. To the extent that appellants points are challenging the sufficiency of the evidence to prove that appellant was guilty of possession of marihuana, we decline to address them. The State does not have to prove the offense for which appellant was arrested beyond a reasonable doubt, in addition to proving that appellant was under arrest for said offense. To the extent that appellant is challenging the lawfulness of appellants arrest, appellant has submitted no authority to support the proposition that the State has any such burden. The offense of escape is committed by escaping from custody when under arrest. There is no statutory requirement

that the arrest be lawful. Having determined in point one that appellant was under arrest when he escaped, we decline to address the lawfulness of that arrest.[1]

We overrule appellants second and third issues.

## Reforming the Judgment

 The State alleged two enhancement paragraphs in the indictment, unauthorized use of a motor vehicle and burglary of a motor vehicle, both of which were felonies at the time of conviction, 1986 and 1991. The trial court sentenced appellant to 25 years' imprisonment. The judgment reflects appellants conviction for escape as a second-degree felony. During the punishment phase, the trial court stated that it found both enhancements to be true. However, the judgment reflects N/A as to both the plea and the findings for each enhancement.

Escape is a felony of the third degree if the "actor is under arrest for, charged with, or convicted of a felony." TEX. PENAL CODE ANN. § 38.06(c)(1) (Vernon Supp. 2008). The punishment range for a third degree felony is 2 to 10 years' imprisonment. TEX. PENAL CODE ANN. § 12.34(a) (Vernon 2003). Escape is a felony of the second degree "if the actor to effect his escape causes bodily injury." *Id.* § 38.06(d) (Vernon Supp.2009). The punishment range for a second-degree felony is 2 to 20 years' imprisonment. *Id.*

§ 12.33(a) (Vernon 2003). Here, there was no evidence of appellants having caused bodily injury, so the judgment should have indicated that appellant was convicted on the third degree felony of escape. Moreover, because the record also reflects that appellant contested the truth of the enhancement allegations and that the trial court found both enhancements true, the judgment should reflect pleas of "not true" and findings of "true" to the enhancement paragraphs rather than "N/A."

The enhancement statute also provides:

(d) . . . [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

*Id.* § 12.42(d) (Vernon Supp.2009). Thus, appellants punishment of 25 years' imprisonment, which was agreed upon by both appellants counsel and the State, is the minimum punishment for a third or habitual offender under section 12.42(d) of the Texas Penal Code.

---

1. If we were to address the sufficiency of the evidence supporting appellants possession of a felony amount of marihuana, we would find the evidence sufficient. Here, the undercover officer and Officer Carro both testified that there was a felony amount of marihuana in the black truck. The undercover officer testified that he saw appellant take a package, which looked just like the packages of marihuana later discovered in the black truck, from the black truck into the house. Also, appellants actions—driving extremely slowly around the neighborhood, shaking hands with the other man and patting him on the back, appearing happy or jubilant upon seeing the shipment of marihuana, glaring at the undercover officer, and slumping in the seat—are all actions that support appellants knowing possession of the marihuana. Viewing the evidence in the light most favorable to the verdict, we would hold that the evidence was legally sufficient to prove that appellant escaped from custody while he was under arrest for knowingly possessing a felony amount of marihuana.

Based on the record, we reform the trial courts judgment to reflect that appellant was found guilty of the third degree, not the second degree felony escape, and to reflect appellants plea of "not true" and the trial courts findings of "true" to each enhancement paragraph, rather than "N/A."

## Conclusion

Having reformed the judgment of the trial court to show that appellant was found guilty of the third degree felony escape, to show that appellant pleaded "not true" to the enhancement paragraphs, and to show that the trial court found both enhancement paragraphs to be "true," we affirm the judgment as reformed.

Justice SHARP, dissenting.

JIM SHARP, Justice, dissenting.

The majority's opinion gives new meaning to the phrase "arresting gaze." To hold that a glance from an officer is sufficient to transform an investigative detention into a custodial arrest and constitute a "completed" arrest is in conflict with decisions from our sister courts and the Court of Criminal Appeals on this issue. I therefore dissent.

In the present case, it was the appellant who voluntarily agreed to accompany the officer as the officer investigated further and voluntarily accepted a ride in the back seat of the police vehicle. The officer himself testified that appellant was neither under arrest nor in custody. As egress from the rear seat of a police vehicle cannot be effected absent the rear door being opened from outside the vehicle, appellant was restrained, but a reasonable person would not have understood that to have been converted into "a restraint to the degree associated with a formal arrest" by a mere glance—no matter how piercing—from an officer. Rather, a reasonable person would have believed, as apparently did appellant, that he was *about to be* arrested.

Before appellant fled, the officer took no action to change the nature of the detention from an investigative detention to custodial arrest other than looking at appellant. Surely something more must transpire than the simple exchange of ambiguous glances or gestures before an investigative detention transforms into a "completed" formal arrest.

A person cannot commit the offense of escape unless there has been a completed arrest; if there is no *completed* arrest, a person is not guilty of escape, although he may be guilty of evading or resisting arrest.[1] *See* TEX. PENAL CODE ANN. § 38.06(a) (Vernon Supp.2009) ("A person commits an offense if he escapes from custody when he is ... under arrest for ... an offense."); *Sample v. State,* 292 S.W.3d 135, 137, n. 1 (Tex.App. Houston [14th Dist.] 2008, pet. ref'd) (citing *Medford v. State,* 13 S.W.3d 769, 773 (Tex. Crim.App.2000)) (emphasis added). In the present case, while appellant was certainly restrained at the time that the marijuana was discovered, the officer never actually completed an *arrest*[2] of appellant.

---

1. As noted by the court of criminal appeals, ... a logical reading of the escape statute and those statutes in *pari materia* (see, e.g., § 38.04 Tex. Pen.Code, Evading Arrest or Detention) indicates the legislature envisioned that an arrest be complete before an individual can be charged with escape ... If one could be prosecuted for escape without a completed arrest, it would negate the effec-

tiveness of an evading arrest or detention charge."
*Medford v. State,* 13 S.W.3d 769, 773 (Tex. Crim.App.2000).

2. It is critical here to distinguish between "custody" and "arrest." We may not use such terms interchangeably. *See Warner v. State,* 257 S.W.3d 243, 247 (Tex.Crim.App.

Under the second prong of *Medford*, an arrest is complete only when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Medford*, 13 S.W.3d at 773. The "reasonable person" standard must be applied "in the context of an arrest" in order "to prevent a conviction based upon some less intrusive type of seizure," such as an investigative detention. *Id.* The only occurrences between the discovery of the marijuana and appellant's fleeing the vehicle that could have "completed" the arrest were an exchange of glances and appellant's subsequent "slumping" in his seat. While I agree that appellant in this case undoubtedly recognized that his crime had been discovered and that he "indicated by his body language his awareness that the officers had the information necessary *to* arrest him",[3] I disagree with the majority's conclusion[4] that appellant's "slump" proved that appellant "understood the situation to constitute a restraint of freedom of movement to the degree which the law associates with formal arrest."[5]

In *Sample*, the defendant was also initially in the back seat of a patrol car under an investigative detention. But, unlike here, the officer in *Sample* took a specific and unambiguous action to convert that investigative detention into an arrest by telling the defendant that he was under arrest. *See Sample*, 292 S.W.3d at 137. The Fourteenth Court of Appeals specifically relied on the officer's statement to the defendant that he was under arrest to convert an investigatory detention confinement into a completed arrest, stating that

> Although it is clear that appellant was first stopped by the officers and placed in the back seat of their patrol car under an investigative detention, the jury could have concluded that appellant's arrest was complete before he fled from Officer Carter. ❦

> Appellant was confined in the patrol car when Officer Carter informed him that he was under arrest. The jury could rationally conclude appellant's arrest was legally complete *at this moment.* *Id.* (emphasis added).

Is a reasonable person who voluntarily agreed to ride in the backseat of a police vehicle to believe that he has now been placed under formal arrest by virtue of a single glance? Under the circumstances of this case, a reasonable person would only have understood that he was *going to be arrested.*

I am not persuaded that a rational trier of fact could have found that appellant was under arrest at the time he fled the scene,

---

2008). A person may be in custody, but not under arrest. *Id.*

**3.** *See* Majority Opinion, p. 563 (emphasis added).

**4.** *Id.*

**5.** Our sister courts have also considered whether detentions were converted into arrests and held that simply because a defendant has acquiesced to a detention, that did not complete an arrest. In *In re B.J.J.*, the Austin Court of Appeals held that, even though a juvenile had been taken into (an unrestrained) detention—to which the juvenile had submitted—"the detention was not a completed arrest for the purpose of the escape statute, and a reasonable person in [his] position would not have understood himself to be restrained to the degree the law associates with a formal arrest." No. 03–07–00633–CV, 2008 WL 2736879, at *3, 2008 Tex.App. LEXIS 5212, at *7–8 (Tex.App.-Austin July 9, 2008, no pet.). *See also Diggs v. State*, No. 10–07–00102–CR, 2008 WL 3112408 (Tex.App.-Waco, Aug.6, 2008) (reversing conviction for escape, holding that defendant was merely in process of being arrested when he fled, even though he briefly submitted to officer's authority).

based upon little more than a passing glance or indeterminate gesture. For this reason, I respectfully dissent. I would find the evidence legally insufficient to support the offense of escape, grant appellant's first issue, reverse appellant's conviction, and enter a judgment of acquittal. Appellant fled because he believed that he was about to be arrested. He committed the offense of evading arrest, not escape.