Opinion issued October 11, 2012.



In The

# Court of Appeals

For The

# First District of Texas

———————————————

NOS. 01-11-00685-CR
01-11-00686-CR

———————————————

**KEVIN ONEAL HINES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 14
Harris County, Texas
Trial Court Case Nos. 1740167 & 1740168**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Kevin Oneal Hines, of evading arrest or detention[1] and resisting arrest.[2] The trial court assessed punishment at 320 days' confinement on each charge, to run concurrently, with 160 days' credit for time served. In his sole point of error, appellant contends the evidence is legally insufficient to support his conviction for resisting arrest. We affirm.

## BACKGROUND

On February 23, 2011 in the evening, Houston Police Department Officers Tabor and Rippey were conducting surveillance on a barbershop at which they suspected drug transactions were occurring. Appellant and another man pulled up to the barbershop, went inside, came out a few minutes afterwards, got in their car, and left. Finding the behavior of two men suspicious, Officer Rippey radioed to a marked patrol car containing Officers Dominguez and Ryans to conduct a traffic stop on the car. Dominguez and Ryans pulled the car over for failing to maintain a single lane of traffic. TEX. TRANSP. CODE ANN. § 545.060 (Vernon 2011).

Dominguez approached the driver while Ryans approached appellant on the passenger side of the car. When Dominguez asked the driver and appellant for identification, appellant told Dominguez he did not have any identification, and gave the name "Derrick Dawson" and a date of birth. The officers ran the name

---

[1]    TEX. PENAL CODE § 38.04(a) (Vernon 2011) (trial court no. 1740167 and appeal no. 01-11-00685-CR).

[2]    TEX. PENAL CODE § 38.03(a) (Vernon 2011) (trial court no. 1740168 and appeal no. 01-11-00686-CR).

2

and date of birth provided on the computer and found no information, leading them to believe that appellant had given them a false name. The officers then walked back to the car to speak with appellant, who appeared nervous. In order to investigate further and for reasons of officer safety, the officers asked appellant to step out of the car; Dominguez testified that their purpose in doing so was to detain appellant in order to talk to him and see if they could get him to give his real name. Ryans told appellant he was detaining him in order to I.D. him and asked appellant to turn around and place his hands behind his back. Appellant turned around, but then pushed Ryans backwards before Ryans could handcuff him and turned to take off. Ryans reached to grab appellant, who pushed Ryans off with his hand, broke free from Dominguez who was holding him, and ran.

Ryans ran after appellant while Dominguez went to the patrol car. When appellant went to jump over the gate to an apartment complex, Ryans caught up to him and grabbed appellant's pants leg; appellant kicked Ryans off of him, fell over the gate, and kept running. Dominguez jumped over the gate and chased appellant through the complex, telling appellant "over and over again" to stop running and that he was under arrest. Dominguez cornered appellant against a wall and a 15-foot fence, whereupon appellant stopped running and started slowly walking towards Dominguez. Dominguez pulled his Taser and commanded appellant "Get on the ground. You're under arrest." Appellant continued walking towards

3

Dominguez with clenched fists; Dominguez tasered him, but appellant got up and started coming at Dominguez again, whereupon Dominguez pulled his pistol and started backing up slowly in order to maintain some distance. Dominguez told appellant "If you come any closer, I'm gonna shoot you." Appellant made a dash for it, with Dominguez in pursuit yelling at him to stop, and was tackled by Officers Tabor and Satterwhite. Once tackled, Appellant kept fighting and pushing at the officers with his hands, feet, and elbow. While the officers were still wrestling with appellant, Ryans went to assist them. Ryans testified that while the officers struggled with appellant, appellant pushed Ryans as well as the other officers.

## LEGAL SUFFICIENCY OF THE EVIDENCE

In his sole point of error, appellant contends that the evidence was legally insufficient to prove that he was under arrest at the time he resisted by pushing Officer Ryans with his hand. Specifically, appellant contends that at the time he pushed Ryans, the officers were attempting to detain him, not to arrest him, and therefore the evidence is legally insufficient to support a conviction of resisting arrest under section 38.03(a). TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2011). The State responds that appellant pushed Ryans again after he fled the initial detention.

4

*Standard of Review*

In assessing legal sufficiency, we determine whether, based on all of the record evidence, viewed in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). It is the function of the trier of fact to resolve any conflict of fact, to weigh any evidence, and to evaluate the credibility of any witnesses. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). We therefore resolve any inconsistencies in the evidence in favor of the verdict, *Matson*, 819 S.W.2d at 843, and "defer to the jury's credibility and weight determinations." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). In a sufficiency review, we measure the evidence against the hypothetically correct jury charge, even if the jury charge given mirrors the indictment or information. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

*Applicable Law*

Section 38.03(a) of the Texas Penal Code provides: "A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another." TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2011). The information alleges that appellant "did then and there unlawfully intentionally PREVENT AND OBSTRUCT M. RYANS a person he knows is A PEACE OFFICER from effecting AN ARREST of [appellant] by using force against M. RYANS, namely BY PUSHING M. RYANS WITH HIS HAND" The language in the charge requires in order to convict that the appellant "intentionally obstruct[ed] M. RYANS, a person he knows is a peace officer, from effecting an arrest of [appellant] by using force against M. RYANS, namely, by pushing M. RYANS with his hand." [CR at 56]. Accordingly, to convict appellant under this information, the State has to prove beyond a reasonable doubt that (1) appellant (2) intentionally prevented or obstructed (3) Ryans, a person appellant knew was a peace officer (4) from effecting an arrest of (5) appellant (6) by pushing Ryans with his hand. *See* TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2011).[3]

---

[3] We note that several courts have held that the manner and means of an offense is not an essential element of the offense and need not be included in the hypothetically correct charge, which we use to measure the sufficiency

6

An arrest is a process that starts when the peace officer begins to make efforts to arrest the suspect and ends once the officer's efforts to restrain or control the suspect are completed. *See Medford v. State*, 13 S.W.3d 769, 772–73 (Tex. Crim. App. 2000); *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.). A conviction for resisting an arrest requires the obstruction or resistance to occur after the arrest begins but before it ends. *In re M.C.L.*, 110 S.W.3d 591, 596 (Tex. App.—Austin 2003, no pet.); *see also Castillo v. State*, No. 01–08–00188–CR, 2010 WL 45833 at *4 (Tex. App.—Houston [1st Dist.] January 7, 2010, pet. ref'd) ("A completed arrest distinguishes the offense of escape from the offenses of evading or resisting arrest."). Merely running from an arresting officer will not amount to the force required for a conviction of resisting arrest under section 38.03; actual force directed against an officer or another person must be proved. *Washington v. State*, 525 S.W.2d 189, 190 (Tex. Crim. App. 1975). In addition, a variance between the facts alleged in the indictment or information and the evidence presented at trial may render the evidence insufficient to sustain a conviction for the offense charged. *See Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995).

---

of the evidence. *See, e.g.*, *Thomas v. State*, 303 S.W.3d 331, 333 (Tex. App.—El Paso 2009, no pet.); *Phelps v. State*, 999 S.W.2d 512, 516 (Tex. App.—Eastland 1999, pet. ref'd). We need not reach this issue because we hold that the evidence is sufficient to prove the manner and means alleged.

7

Whether a person is under arrest or merely temporarily detained depends on the degree of restraint imposed on the person's freedom to leave or move. *State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008). "A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Clark v. State*, No. 01–07–00993–CR, 2009 WL 566448 at*3 (Tex. App.—Houston [1st Dist.] March 5, 2009, no pet.) (citing *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)). The occurrence of an arrest does not depend on any bright line test, but rather must be determined by examining the totality of the circumstances. *Sample v. State*, 292 S.W.3d 135, 137 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Factors include the amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, whether the officer told the detained person that he was under arrest or was being detained only for a temporary investigation, as well as anything else that is relevant. *Sheppard*, 271 S.W.3d at 291. "If the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, this suggests the detention is an arrest." *Id.*

However, an encounter between a suspect and police which begins as noncustodial interrogation may escalate into a full custody arrest. *Dowthitt*, 931 S.W.2d at 255. In determining whether a noncustodial encounter has escalated into custodial interrogation, for purposes of determining whether a *Miranda* violation has occurred, courts will look at (1) the existence of probable cause to arrest; (2) the police officer's subjective intent; (3) the focus of the investigation; and (4) the defendant's subjective belief. *Dowhitt*, 931 S.W.2d at 254; *Shpikula v. State*, 68 S.W.3d 212, 218 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). However, those factors are relevant only to the extent that they are manifested to the defendant through the words and actions of law enforcement officials. *Clark v. State*, 2009 WL 566448 at *3.

Considering the *Sheppard* factors, Officers Ryans and Dominguez initially sought to detain, rather than arrest, appellant. The officers used no force but asked appellant to get out of the car, turn around, and place his hands behind his back. Their purpose was to identify appellant. They did not transfer appellant to another location, but meant to detain appellant at the scene for the time being. Ryans informed appellant that he was being detained. Handcuffing appellant was a reasonable safety precaution in light of appellant's size and the danger to police in conducting roadside narcotics investigations. Therefore, when appellant pushed

Ryans the first time before Ryans could put handcuffs on him, arguably appellant was not under arrest.

However, the encounter quickly escalated into a police chase and physical confrontation, which terminated in appellant's arrest. Thus the question on appeal is at what point could the trier-of-fact rationally find that the situation changed into an attempted arrest, and whether the trier-of-fact could rationally find beyond a reasonable doubt, resolving any inconsistencies in favor of the verdict, that appellant pushed Ryans with his hand after that time.

Once appellant fled from the scene, a rational trier of fact could find the goal of the officers changed from detaining to arresting appellant. At that point, they had probable cause to arrest Ryans for evading detention,[4] failure to identify,[5] or assault.[6] The officers were at that point endeavoring to arrest appellant, not merely question him. They gave chase, radioed for assistance, tasered appellant, pulled a gun, and repeatedly ordered appellant during the chase to stop running, that he was under arrest, and to get on the ground. At least by the time appellant was informed during the chase that he was under arrest, if not before, he was subject to arrest. Finally, and after he must have known himself to be subject to arrest, appellant was tackled to the ground by officers, where for a period of time he wrestled, pushing

---

[4]     *See* TEX. PENAL CODE ANN. § 38.04(a) (Vernon 2011).
[5]     *See* TEX. PENAL CODE ANN. § 38.02(b) (Vernon 2011).
[6]     *See* TEX. PENAL CODE ANN. § 22.01(a)(3) (Vernon 2011).

and kicking the officers with his hands, feet, and elbow before he could be handcuffed. Ryans assisted in the struggle and there was evidence that appellant pushed Ryans before the officers successfully handcuffed appellant. It was not directly stated that appellant pushed Ryans *with his hand*; however, taking together the evidence that appellant was pushing, kicking, and hitting the officers with his hands, feet, and elbow during the struggle, and the evidence that Ryans participated in the struggle and was pushed by appellant, a finder of fact could have rationally concluded beyond a reasonable doubt that appellant's hands contacted Ryans at some point in a manner sufficiently similar to the alleged pushing. Evidence that a defendant struggled and grabbed and jerked an arresting officer's arm was found to be sufficient evidence that defendant "struck" the officer as alleged in the indictment, even though the precise term was not used at trial. *Jones v. State*, 620 S.W.2d 129, 130 (Tex. Crim. App. 1981). Also, since the testifying officers used the word "kicked" specifically when describing contact made with appellant's foot it would appear they meant by "push" to refer to contact made by appellant's hand. Therefore, there exists sufficient evidence to support a rational finding that appellant pushed Ryans *with his hand* as alleged in the charge and information, after he was subject to arrest and before the arrest was completed.

Appellant relies extensively on *Vaughn v. State* for the proposition that he was resisting detention and thus cannot be convicted under section 38.03. *Vaughn v. State*, 983 S.W.3d 860, 863 (Tex. App.—Houston [14th Dist.] 1998, no pet.). However, *Vaughn* is distinguishable from the present case because Vaughn was not being arrested at the time his resistance occurred. *Id.* Vaughn "flail[ed] his arms" when the officer attempted to handcuff him. *Id.* at 861. The officer then managed to handcuff Vaughn and complete a pat down search of Vaughn's person. *Id.* The officer in *Vaughn* testified that the handcuffing of Vaughn was not an arrest but merely a detention in order to conduct a pat down. *Id.* at 863. Furthermore, and in contrast with appellant, at the time Vaughn resisted no probable cause existed for his arrest. *Id.*

We overrule appellant's sole point of error.


## CONCLUSION

We affirm the trial court's judgment on the resisting arrest charge. Because appellant filed a notice of appeal on the evading arrest or detention charge, but raised no issues related thereto, we also affirm the trial court's judgment for evading arrest or detention.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).