**Opinion filed November 12, 2021**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00404-CR

_____

## RANDALL LEE NIX, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. 3198**

## MEMORANDUM OPINION

Appellant, Randall Lee Nix, challenges his conviction for escape while arrested, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.06(a), (c) (West 2016). Appellant waived his right to a trial by jury, and the trial court found him guilty of the charged offense. Appellant pled true to two enhancement paragraphs,

and the trial court assessed punishment at thirty-five years in the Institutional Division of the Texas Department of Criminal Justice. In his sole issue, Appellant contends that the evidence presented in this case was insufficient to establish that he committed the offense of felony escape. We agree. Because the evidence does not establish that Appellant was under arrest at the time he fled law enforcement, we reverse the conviction for felony escape and render a judgment of acquittal.

*Background*

On September 29, 2018, Trooper Tyler Moses of the Texas Department of Public Safety was dispatched to a two-vehicle crash in Coleman County. Trooper Moses checked on the drivers of both vehicles. One driver was already in the ambulance being treated, and the other driver was Appellant. Two weeks later, on October 12, 2018, Trooper Moses completed a probable cause affidavit that resulted in an arrest warrant for Appellant. John Rhodes, Appellant's parole officer for an unrelated matter, learned of the arrest warrant and asked Appellant to report to the Coleman County Courthouse on October 17, 2018. Appellant arrived for the meeting and Rhodes, who did not have authority to execute the arrest, escorted Appellant to the sheriff's office. After walking to the sheriff's office, Rhodes told Appellant that both the sheriff's office and the parole office had issued warrants for his arrest.

At this point, Appellant retreated and took two or three steps out of the sheriff's office and down the hall. Rhodes grabbed the back of Appellant's jacket and asked him where he was going. Appellant responded that he was going outside to smoke. Rhodes advised Appellant that he would need to ask Deputy Sheriff Vickie Kemp for permission. Deputy Kemp told Appellant that he was in custody and could not go outside to smoke. Seconds later, Appellant "just bolted" and ran

out the door down the hall and out of the courthouse.[1] Rhodes and Sheriff Les Cogdill pursued Appellant, and Sheriff Cogdill caught up to him at the Coleman InterBank drive-through. The InterBank was visible from the windows of the courthouse, and Judge Robert Nash testified that he witnessed the chase and capture of Appellant from his office window.

After Appellant was tackled to the ground, Sheriff Cogdill placed Appellant's hands behind his back and began walking him back to the courthouse. Appellant did not fight or resist, and he submitted to being in the custody of Sheriff Cogdill as they walked back to the courthouse. At some point during the walk back, a patrol unit stopped and provided Sheriff Cogdill with handcuffs for Appellant. After he was returned to the sheriff's office and, unlike his previous arrival, Appellant was placed in the booking room; the door to the hallway was closed; and Appellant was placed in leg shackles. From the moment Appellant was captured by Sheriff Cogdill, until he was presented to the justice of the peace, he was continuously under the sheriff's control and was not free to leave.

At the time of these events, the sheriff's office was located on the first floor of the Coleman County Courthouse, with a doorway leading into the office from the courthouse hallway. A front desk faced the hallway door, and, facing this desk,

---

[1]The indictment alleged that Appellant "intentionally and knowingly escape [sic] from the custody of SHERIFF LES COGDILL who had RANDALL LEE NIX in his custody when the defendant was under arrest for the offense of Aggravated Assault with a Deadly Weapon, a felony, and a parole warrant." When asked if he was "personally there" when the parole officer delivered Appellant to the Sheriff's Department, Sheriff Les Cogdill testified: "I was there, but I was inside my office. So I didn't ever see him once he came in." The sheriff heard the conversation with Deputy Kemp, stood up from his desk, and by the time he got to the doorway, saw Appellant running down the hall. Accordingly, Appellant was never personally in the custody of Sheriff Cogdill. Therefore, it is the alleged custody and arrest by Deputy Kemp—and Appellant's parole officer—that we examine here.

Sheriff Cogdill's office was located to the right and the small booking room was located to the left.

Appellant's sole issue on appeal is whether he was in custody, to the degree associated with an arrest, prior to his running away from the sheriff's office and later being captured by Sheriff Cogdill. Appellant argues that the evidence is insufficient to prove he was in custody upon his initial arrival to the sheriff's office and that, because he was not, he could not have escaped from custody as alleged in the indictment and pursuant to Section 38.06 of the Texas Penal Code.

*Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288−89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded.

*Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

*Analysis - There Was No Escape Under Warner and Section 38.06*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Herron v. State*, 625 S.W.3d 144, 152 (Tex. Crim. App. 2021). To prove the offense of escape, as provided by Section 38.06(a)(1) of the Texas Penal Code, the State must show that a person (1) escaped (2) from custody (3) after having been arrested for, lawfully detained for, charged with, or convicted of an offense. PENAL § 38.06(a)(1); *see Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000) (citing *Henderson v. State*, 600 S.W.2d 788, 789 (Tex. Crim. App. 1979)). In *Medford*, the Texas Court of Criminal Appeals determined that a logical reading of the escape statute, when compared to the evading arrest statute, is that the legislature intended that an arrest must be *complete* before an individual can be charged with escape. *Medford*, 13 S.W.3d at 772. The Penal Code does not define the term "arrest," and Article 15.22 of the Code of Criminal Procedure only defines arrest as "being taken into custody." *Id.* Thus, "[f]or purposes of the escape statute, an 'arrest' is complete when a

person's liberty of movement is successfully restricted or restrained." *Id.* at 773. This may be achieved by "an officer's physical force or the suspect's submission to the officer's authority" and the arrest is only complete if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* (quoting *United States v. Corrall-Franco*, 848 F.2d 536, 400 (5th Cir. 1988)).

In *Medford*, the defendant was stopped because an officer suspected the defendant was the subject of an arrest warrant. *Medford*, 13 S.W.3d at 771. During the investigatory search, the officer discovered drug paraphernalia and informed Medford that "he was under arrest and asked him to place his hands behind his back. As the officer grasped [Medford's] left arm in order to place it in handcuffs, [Medford] broke free of the officer's grip and fled." *Id.* Medford was found guilty of escape. *Id.* The Third Court of Appeals, on remand and based on the guidance from the Court of Criminal Appeals in *Medford*, concluded that the evidence was legally insufficient to support an escape charge. *See Medford v. State*, 21 S.W.3d 668 (Tex. App.—Austin 2000, no pet.). The court considered Medford's prior criminal history as relevant under the reasonable person standard analysis. As a "reasonable person familiar with the distinction between an arrest and a temporary investigative detention," Medford "would not have understood himself to be restrained to the degree the law associates with a formal arrest." *Id.* at 670. Further, a reasonable person's belief that he is not free to leave is not, alone, "enough to constitute 'arrest' or 'custody' under the escape statutes." *Id.* Medford was not able to "escape" because his arrest was not completed, and because he was not in custody, at the time he ran from officers.

In *Warner*, the Court of Criminal Appeals reaffirmed its holding in *Medford*: that, for purposes of the escape statute, a person must have been "in custody"[2] before he is able to escape. *See Warner v. State*, 257 S.W.3d 243, 247 (Tex. Crim. App. 2008). Warner was identified as being a party to a domestic dispute and as having an open "blue" warrant for a parole violation. *Id.* at 244. When the sheriff's department arrived at the location of the domestic dispute, the deputy stated he needed to speak with Warner. *Id.* Warner identified himself and walked to the patrol vehicle with the deputy. *Id.* The deputy backed Warner up against the vehicle, and when the deputy grasped Warner's arms and told him he was under arrest, Warner struggled, broke free, and ran away. *Id.* During the struggle, the deputy kept his left hand on Warner's wrist and reached for his handcuffs with his right hand. *Id.* At trial, Warner was convicted of escape. The Fourteenth Court of Appeals reversed and acquitted Warner, and the Court of Criminal Appeals later affirmed this decision. *Id.* at 243, 247−48. "[T]he distinction the legislature has made between the offense of escape and the offenses of evading . . . and resisting arrest" cannot be ignored. *Id.* at 247. Appellant was not charged with evading or resisting arrest—only the offense of escape. The escape statute applies to those circumstances where the officers have, at one point prior to the escape, successfully restrained or restricted a suspect to the point that it "amounted to an arrest." *Id.* In order to constitute the

[2]In *Medford* and *Warner*, as in Appellant's case, the core issue was whether a person is in custody by being under arrest. *See Warner*, 257 S.W.3d at 247. That is not always the case; a person can also be in custody under the escape statute while "lawfully detained for," "charged with," or "convicted of an offense"; while "in custody pursuant to a lawful order of a court"; while "detained in a secure detention facility"; or while "in the custody of a juvenile probation officer." PENAL § 38.06(a); *see Warner*, 257 S.W.3d at 247. The indictment in this case alleged that Appellant was in custody by being under arrest; no other manner of custody was alleged in the indictment. Therefore, this court's decision is confined to determining whether Appellant was in custody by arrest.

7

offense of escape, there must be evidence of one's custody and arrest that exceed those of *Warner*.

The State cites several cases that are distinguishable from the facts presented in Appellant's case. In *Sample v. State*, the defendant was frisked and placed in the back of a patrol vehicle following a traffic stop. *Sample v. State*, 292 S.W.3d 135, 136 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Officers discovered that Sample had open arrest warrants and, without opening the door to the patrol unit, rolled down the window and informed Sample he was under arrest. *Id.* Officers ordered Sample to face away and place his hands behind his back as they opened the patrol vehicle door; Sample seemingly complied and then, once the door was open, fled. *Id.* The Fourteenth Court of Appeals concluded that a reasonable jury could have found that Sample was successfully confined in the patrol vehicle when officers informed him that he was under arrest, at which point a reasonable person would not have felt free to leave. *Id.* at 137.

In *Castillo v. State*, the defendant was also confined in the backseat of a patrol vehicle. *Castillo v. State*, 404 S.W.3d 557, 560 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). The rear doors of the patrol unit could only be opened from the outside, and Castillo broke the window of the patrol unit and climbed out of it after watching officers discover a felony amount of marihuana. *Id.* at 561. Castillo was not expressly told he was under arrest, but the court held that his liberty of movement was "sufficiently restricted." *Id.* at 563. The court also held that a reasonable person, in Castillo's position, would "have understood the situation to constitute a restraint of freedom of movement to the degree which the law associates with formal arrest." *Id.* Castillo had been taken back to the scene where officers observed a suspected drug transaction; he then observed officers discover marihuana packages that were

like the one he had been holding; Castillo was in the locked patrol car; and his body language indicated that he was aware that officers had obtained enough evidence to arrest him. *Id.*

Finally, the State points to *Martinez v. State* as factually analogous to this case. *Martinez v. State*, No. 07-03-0407-CR, 2005 WL 2548594 (Tex. App.—Amarillo Oct. 12, 2005, no pet.) (mem. op., not designated for publication). In *Martinez*, the court held that the defendant was in custody within the meaning of the escape statute. *Id.* at \*2. Martinez submitted to the arresting officer's authority and the officer exercised physical control over Martinez. *Id.* Martinez allowed the officer to lead him from the house he was in and asked for permission before returning to the home to give his wallet to another. Only then, as the officer led Martinez to the patrol vehicle, did Martinez bolt. *Id.* at \*1.

The case before us is distinguishable from *Martinez*, *Castillo*, and *Sample*. Appellant was never in a patrol vehicle, and it is disputed whether he was even completely inside the sheriff's office at the time his parole officer announced that he was delivering Appellant because of the open warrants. Appellant also did not initially ask for permission to leave (as in *Martinez*), he merely tried to leave. Being pulled on or stopped by his parole officer—who had no authority to arrest him—was not a show of submission to Deputy Kemp's authority, even though she specifically told Appellant he was not free to leave. By remaining in or near the doorway to the sheriff's office and then asking to leave more than once, Appellant did no more than bide his time before bolting out of the courthouse.

The testimony is conflicting as to exactly how much time had passed, but multiple witnesses stated that mere seconds passed between Appellant's first attempt to leave and his successful flight from the courthouse. At no point before he fled

9

was Appellant ever restrained in the sheriff's office, placed in handcuffs, or in shackles, nor was there an attempt by any law enforcement personnel to do so. Appellant was never completely inside the sheriff's office, was never solely under the control of the deputy or the sheriff, and had not submitted to their authority. Appellant was not restrained; he was not told that he was under arrest; and no physical force or touching was used to restrain him by an officer who possessed the authority to arrest.

*Medford* and *Warner* are instructive because Appellant may have seemingly complied to further his efforts to avoid arrest and because Appellant was familiar with law enforcement practices, having been arrested before, being taken to the threshold of the sheriff's office, he "would not have understood himself to be restrained to the degree the law associates with a formal arrest." *Medford*, 21 S.W.3d at 670. Further, the case before us is more factually similar to *Lerma v. State* and *Diggs v. State*, both of which follow *Medford* and *Warner* with respect to making custody determinations for circumstances when an arrest has not been completed. *See Lerma v. State*, No.13-14-00180-CR, 2014 WL 6858856 (Tex. App.—Corpus Christi–Edinburg Dec. 4, 2014, no pet.) (mem. op., not designated for publication); *Diggs v. State*, No. 10-07-00102-CR, 2008 WL 3112408 (Tex. App.—Waco Aug. 6, 2008, pet. ref'd) (mem. op., not designated for publication).

In *Lerma*, following a bench trial, the trial court found Lerma guilty of escape under Section 38.06(a). *See Lerma*, 2014 WL 6858856, at *1. Appellant appealed contending that the evidence was insufficient to support his conviction. *Id.* The Thirteenth Court of Appeals reversed Appellant's conviction and rendered a judgment of acquittal. *Id.* Lerma was reporting to his community supervision officer at his regularly scheduled appointment. *Id.* The supervision officer told

Lerma that the sheriff's office had issued a warrant for his arrest on a burglary offense and that deputies were on their way to pick him up. *Id.* Lerma said that he "needed a moment" and he thereafter fled the supervision officer's office. *Id.* The community supervision officer was not a licensed peace officer and had no authority to arrest Lerma. *Id.* The State argued that Lerma was in the custody of the probation officer and was under arrest for a felony offense. *Id.* The *Lerma* court discussed in some detail *Medford* and *Warner* and stated: "In the present case, as in *Medford* and *Warner*, appellant was not in custody by being under arrest. Mere intent to make an arrest or an officer's expression of such intent is insufficient." *Id.* at *4. The court held that "[t]*here must be custody or detention and submission to such arrest.*" *Id.* (quoting *Medford*, 13 S.W.3d at 772−73). The court further stated that "the uncontroverted evidence established that appellant's liberty of movement was not successfully restricted or restrained, because [the community supervision officer] did not use physical force and appellant did not submit to her authority." *Id.* The court then examined whether Lerma was "in custody" by some other circumstance as defined under Section 38.01(1)(A). The court concluded that other provisions of the statute were inapplicable and rendered a judgment of acquittal. *Id.* at *4–5.

In *Diggs*, a caseload assistant for a county Community Supervision and Corrections Department discovered an active warrant for Diggs's arrest. *Diggs*, 2008 WL 3112408, at *1. The sheriff's office was contacted when Diggs reported for his next urine analysis. *Id.* When a deputy sheriff arrived to arrest Diggs, the caseload assistant led the deputy to a room to wait for Diggs. *Id.* When Diggs entered the room, the caseload assistant remained in the doorway with her left arm on the door facing while the deputy informed Diggs that he had a warrant, that Diggs was under arrest, and that the deputy was taking him into custody. *Id.* The deputy

responded to Diggs's inquiry that the warrant was for unlawful possession of a firearm by a felon. *Id.* The deputy instructed Diggs to turn around and place his hands on the wall, but Diggs placed his hands in his pockets and mentioned giving his money to a friend. *Id.* The deputy told Diggs that he would have to do that later, then grabbed Diggs's arm and turned him to face the wall. *Id.* Diggs turned back around and placed his hands in his pockets. *Id.* The deputy again grabbed Diggs's arm and turned him around to face the wall. *Id.* Diggs began to lower his arms but, according to the deputy, "finally submitted and left his arms on the wall." *Id.* When the deputy bent down to place Diggs in leg restraints, Diggs pushed away from the wall, knocking the deputy backwards, and ran toward the door blocked by the caseload assistant. *Id.* He pushed her shoulder with his hand, and the caseload assistant tried to push Diggs away. *Id.* Diggs shoved her with both hands, causing her to fall against some file cabinets and knocking the cabinets out of place. *Id.* The deputy and the caseload assistant were unable to apprehend Diggs. *Id.* He was apprehended the next day and was subsequently charged with and convicted of escape, which Diggs appealed on the basis of legal insufficiency. *Id.* at *1–2. The State argued that the totality of the circumstances established custody and a completed arrest. *Id.* at *3. The Tenth Court of Appeals held that Diggs was merely in the process of being arrested and that the deputy was unable to complete the arrest by successfully restricting or restraining Diggs's liberty of movement. *Id.* at *4. Accordingly, the court held that the evidence was legally insufficient to support Diggs's escape conviction and it reversed and rendered a judgment of acquittal. *Id.*

Just as in *Lerma* and *Diggs*, this court is constrained to follow the Court of Criminal Appeals' holding in *Warner*. Therefore, we hold that Appellant in this matter was merely in the process of being arrested and that the sheriff's department

was unable to complete the arrest by successfully restricting or restraining Appellant's liberty of movement. Here, Appellant was not charged with evading or resisting arrest—only the offense of escape. Appellant was not under arrest at the time he ran from the courthouse. Appellant's parole officer did not successfully restrain him and, in any event, had no authority to arrest Appellant. Additionally, Appellant had not submitted to Deputy Kemp's authority, nor did Sheriff Cogdill ever have any control over Appellant. Under these circumstances, a reasonable person would not have felt restrained to the degree associated with an arrest. Accordingly, Appellant could not have committed the offense of escape. We sustain Appellant's sole issue on appeal.

*This Court's Ruling*

We reverse the trial court's judgment and render a judgment of acquittal.


W. BRUCE WILLIAMS

JUSTICE


November 12, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.