**Affirmed and Majority and Dissenting Opinions filed March 30, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00216-CR

---

**FRED LOUALEX RODGERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2
Fort Bend County, Texas
Trial Court Cause No. 18-CCR-206134**

---

## MAJORITY OPINION

In this single-issue appeal, appellant Fred Rodgers, complains that his misdemeanor failure-to-identify conviction was not supported by legally sufficient evidence at trial. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was apprehended at a Wal-Mart in Stafford, Texas on suspicion of theft of items that he failed to scan and pay for at the self-check-out register. He

was detained in the Wal-Mart's loss prevention office along with his brother and mother by the store's loss prevention officer pending the arrival of Stafford police. He was later charged for that offense and his case was tried to jury. Based on a series of events that took place once Stafford police arrived, the State also charged appellant by information with a failure-to-identify offense. The two offenses were tried together.

The most significant evidence in the trial of appellant's failure-to-identify case consisted of Officer Ryan Graves's testimony and the video recording from his body-camera showing his interaction with appellant and others in Wal-Mart's loss prevention office.

*Officer Graves's Testimony*

Officer Graves testified that appellant identified himself as "Terrence Rogers," which yielded no record in the police database. He later testified that appellant refused to provide his name. Officer Graves originally characterized his handling of appellant as a detention; explaining that he had not arrested appellant until after the value of the stolen property had been confirmed to exceed the minimum dollar-value consistent with the Stafford Police Department's arrest policy. While testifying, Officer Graves revealed that he was under the impression that appellant was being tried for an offense under different subsection of the failure-to-identify statute, for providing him with a false name (rather than refusing to provide a name) following Graves's lawful detention of appellant (rather than following Graves's lawful arrest of appellant). But during his redirect examination, Officer Graves testified in support of the charged offense:

Q. In this case, did Mr. Rodgers refuse to give you his name?
A. Yes, sir.
Q. Did he do it more than once?

2

A. He did.

Q. And for clarification, was he in handcuffs the entire time that he refused to give you his name?

A. Yes, sir.

Q. And at one point you read him what's commonly referred to as his Miranda Rights, right?

A. Yes, sir.

Q. And he refused to give you his name again; is that right?

A. Yes, sir.

Q. And at no point during the entirety of his time in that loss prevention room did you let him out before y'all walked into it, right?

A. No, sir --

Q. You testified he was trying to get out at the beginning, right?

A. At the beginning, he was trying to walk out the front door.

Q. Yes, sir. And did you guys let him walk out?

A. No, sir, we didn't.

*State's Exhibit 3, the Body-Cam Video*

States Exhibit 3, provided the jury with an objective look at the entire exchange at the store that forms the basis of the failure-to-identify charge. The video showed that upon entering the loss prevention office, Officer Graves immediately encountered appellant, requested that appellant remove his backpack, and recovered a knife from appellant. After appellant refused Officer Graves's request to search his pockets, he was handcuffed, and told that he was being detained for theft. Appellant stated that he had not stolen anything. Appellant again asked why he was being detained. Officer Graves then stated:

> Because you were acting aggressive when I came to talk to you. . . .
> So I detained you for officer safety. That doesn't mean you're
> arrested. That means you can come out of the handcuffs as soon as I
> figure out what's going on.

3

Then Officer Graves requested appellant to provide his last name, first name, and date of birth. Appellant, whose correct name is Fred Rodgers, provided a false first name and misspelled last name, "Tearrance Rogers," but provided his correct date of birth.

Officer Graves then spoke with the store's loss prevention officer who reported details of witnessing appellant steal store items. As Officer Graves shuttled between suspects and the store employees he was told on his radio that the name appellant provided him was "not returning." Officer Graves had a brief discussion with appellant and asked him again for some type of identifying information. Officer Graves then approached appellant's half-brother and questions him about the theft, then reads his half-brother his *Miranda* rights. Officer Graves then shuttled back to appellant, read appellant his *Miranda* rights, then interrogated appellant about the theft. He suggests to appellant that store cameras would have captured any offense. Officer Graves was then alerted by a store employee about missing gloves in appellant's backpack that the employee would like to re-shelve, and then searches the backpack. After discovering unpurchased gloves in appellant's backpack, Officer Graves confronted appellant, accused appellant of lying to him and ordered appellant to sit down. Appellant resisted initially, but ultimately complied. Officer Graves then shuttled across the room to appellant's half-brother, hand cuffed him, and asked that he sit down while stating that appellant was being "temporarily detained."

Officer Graves returned to appellant and asked him if he had ever been arrested before. Appellant did not respond and appeared to act as if asleep. Officer Graves then stated, "You are not arrested right now, you are detained." After a pause, Officer Graves then asked appellant to spell his name again, and appellant nodded his head in silence. Then Officer Graves stated, "So you are just

4

not going to talk to me now?" Appellant responded by reminding Officer Graves that he had been read his *Miranda* rights and his right to remain silent. Officer Graves responded, "Right now I'm just trying to identify you. I'm not asking you anything about what's going on. I'm trying to identify who you are. . . Because this name's not coming back and I feel like you're not being truthful with me."

Officer Graves then had a discussion with the loss prevention officer, who explained to Officer Graves his challenge identifying who, between appellant and his half-brother, stole which of the items identified as stolen. They agreed the loss prevention officer would add all up and then split the total in half.

Officer Anzalone arrived an hour after Officer Graves arrived to assist Officer Graves. By this point appellant's mother had been excused from the loss prevention office. In the doorway of the loss prevention room, Officer Graves related to Officer Anzalone the problem identifying appellant. Officer Graves gave Anzalone the note pad on which he had written the name that appellant had provided earlier, and Anzalone approached appellant asked appellant if the name on the pad was correct. Appellant indicated that it was correct. Graves repeated the spelling of the first name appellant provided, "T-E-A-R-R-E-N-C-E, correct?", to which appellant nodded affirmatively again. Later, Anzalone turned to appellant, stating, "You are aware it's another charge, right?" Appellant nodded in response. Anzalone continued and told appellant that if he had any warrants that it would be easier to handle if he was not "caught up . . . in a Failure to ID." Anzalone then asked appellant again while pointing to Officer Graves's note pad, "That's your name?" Appellant then said "No," stated his correct name, "Fred" which he ridiculed Graves for not seeing printed on his knife, and spelled out his last name "R-O-D-G-E-R-S."

5

*"The greatest gift you ever give is your honest self."*[1]

The jury found appellant guilty on the failure-to-identify offense. The State and appellant reached an agreement as to appellant's punishment, for fifty-nine days' jail time. The trial court sentenced appellant accordingly, crediting appellant for fifty-nine days' jail time served, the full duration of that sentence. This appeal challenges only the guilt portion of the case.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant's sole complaint is that the evidence at trial was legally insufficient to support the elements of his failure-to-identify conviction.

### A. Standard of Review

In evaluating this complaint, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of

---

[1] Fred Rogers (1995). "You Are Special: Words of Wisdom for All Ages from a Beloved Neighbor", p.92, Penguin.

the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

**B. Legal Standards Applicable to Failure-to-Identify Offense**

The information alleges that appellant "on or about November 13th 2018 did then and there intentionally refuse to give his name and date of birth to Ryan Graves, a peace officer who had lawfully arrested the said defendant and requested the information, and the said defendant knew that Ryan Graves was a peace officer." It further alleges that appellant was at the time "a fugitive from justice."

Section 38.02 of the Penal Code outlines different conduct that constitutes a failure to identify. The offense which carries the lightest penalty is outlined under subsection (a):

> (a) A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information.

Penal Code Ann. § 38.02(a). When as in this case, such conduct accompanied by an allegation that the person "was a fugitive from justice at the time of the offense", the offense under subsection (a) is enhanced to a Class B misdemeanor. Tex. Pen. Code Ann. §§ 38.02, 12.21, 12.22.

Appellant frames his appellate complaint as a sufficiency-of-evidence challenge to two different offenses, subsections (a) and (b) of section 38.02 of the Texas Penal Code.[2] Because appellant was only charged and convicted for an offense described under subsection (a) of 38.02 of the Texas Penal Code, we only consider whether the evidence at trial was legally sufficient to support a conviction

---

[2] The two subsections differ 38.02(a) addresses the intentional refusal to give name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information." Section 38.02(b) addresses the intentional giving of "a false or fictitious name, residence address or date of birth to a peace officer who has . . . lawfully arrested the person [or] lawfully detained the person . . . ." Tex. Pen. Code Ann. § 38.02(a), (b).

for that offense.

The State was required to prove that appellant intentionally refused to give his name or date of birth, to a peace officer, Officer Graves, after Officer Graves had lawfully arrested him and requested the information, and that defendant was a fugitive from justice at the time of the offense. Tex. Pen. Code Ann. § 38.02(a). "Fugitive from justice" means a person for whom a valid arrest warrant has been issued. Tex. Pen. Code Ann. § 38.01(5). The State put forth uncontroversial evidence such that a rational jury could have concluded that Officer Graves was a peace officer, that appellant was a fugitive from justice at the time of the offense and that Officer Graves requested appellants name and date of birth. We focus our attention to whether Officer Graves "lawfully arrested" appellant and if so, after that point in time whether appellant intentionally refused to provide his name.

## C. Analysis

*Lawful Arrest*

We first consider whether a rational jury could have concluded that appellant was "lawfully arrested." The State asserts that the jury was free to arrive at their own conclusion about the definition of arrest because the term "lawfully arrested" is not defined in the Penal Code. Though the jury was not provided any legal definition of the term, the term is not meaningless. *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000)("The fact that the Legislature did not incorporate a specific definition of 'arrest' into the Penal Code does not authorize jurors 'to employ any [acceptable] meaning of the term.'").

For purposes of distinguishing between a full custodial arrest and a temporary detention, an arrest occurs when (1) a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's

8

physical force or the suspect's submission to the officer's authority; and (2) a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with a formal arrest. *Sample v. State*, 292 S.W.3d 135, 137 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Because the occurrence of an arrest cannot be determined by any bright-line test, whether an arrest has occurred must be determined on a case-by-case basis by examining the totality of the circumstances. *Id*. To effectuate a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense. *See Amores v. State,* 816 S.W.2d 407, 411 (Tex. Crim. App. 1991).

Factors we consider in determining whether a particular encounter amounted to an arrest or detention include the amount of force displayed, the duration of detention, the efficiency of the investigative process, whether it was conducted at the original location or the person is transported to another location, and whether the officer told the detained person that he or she was under arrest or was being detained only for a temporary investigation. *State v. Sheppard,* 271 S.W.3d 281, 291 (Tex. Crim. App. 2008); *see* 40 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 10.20 (3d ed. 2011 & Supp. 2020). If the degree of incapacitation appears more than necessary to safeguard the officers and assure the suspect's presence during a period of investigation, these facts suggest the detention is an arrest. *Id.* at 291; *Ortiz v. State*, 421 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (quoting Dix & Dawson § 7.34).

Viewing the evidence in a light most favorable to the verdict, we conclude that a rational jury could have concluded from Officer Graves's testimony and the body-cam video that appellant was lawfully arrested shortly after Officer Graves

9

discovered stolen gloves in appellant's backpack, when Officer Graves verbally instructed (and physically guided) appellant to sit down against appellant's expressed wishes and told appellant that he had lied to him. Officer Graves's discussion with the loss prevention employee and his discovery of stolen property in appellant's backpack aided Officer Graves in having probable cause to arrest appellant for theft. *Castillo v. State*, 404 S.W.3d 557, 563 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (temporary detention pending transformed into custodial arrest upon appellant witnessing police's discovery of contraband connected to appellant). A reasonable person would have understood the situation to constitute a restraint on his freedom of movement to the degree that the law associated with a formal arrest.

Importantly, although Officer Graves reiterated that appellant was detained not arrested, he never stated that appellant was free to leave, and when he first arrived prevented appellant from leaving. *Id.* at 564; *but see Howes v. Fields*, 565 U.S. 499, 514–17 (2012) (finding inmate who was called to room for interview was found not "in custody" under *Miranda*, during five-to-seven hour interview when he was offered food and drink, not physically restrained, and told that he was free to leave and return to his cell whenever he wanted). After Officer Graves commanded that appellant sit, it became clear that a reasonable person in appellant's position would not have felt free to leave. *See Sample v. State*, 292 S.W.3d at 137; *see also Castillo*, 404 S.W.3d at 563. The jury may have observed that from the video that shortly after he sat down this prompted a change in appellant's demeanor.

We note that the jury heard evidence favorable to finding that appellant was not formally arrested. The exchange took place at Wal-Mart, rather than at the station or in a police vehicle; appellant was not transported to a different location.

10

And the video showed various instances where Officer Graves told appellant he was being detained and not arrested. While the officer's expressions are relevant to our analysis concerning if and when a jury could rationally conclude Officer Graves had lawfully arrested appellant, we are not aware of any case which instructs us that any particular criteria is dispositive, or would require the jury to disregard other contrary evidence that lends to the conclusion that appellant was lawfully arrested.

We accept that in all but the last instance that Officer Graves told appellant he was being detained and not arrested, that it remained true that he was not yet arrested. However, a rational jury could conclude that when Officer Graves personally found stolen gloves in appellant's backpack, accused him of lying, and commanded him to sit down, that his theft investigation had taken a turn. *See Castillo*, 404 S.W.3d at 563. A rational jury could conclude that Officer Graves had probable cause to arrest appellant for the theft of the stolen property and that he objectively manifested an intent to arrest appellant in such a way that appellant understood that he was arrested. *See id*. Moreover, a rational jury could reasonably conclude that shortly after the arrest, when Officer Graves stated that appellant was not under arrest but only detained, based on appellant's conduct in the body cam video, that appellant disregarded Officer Graves's statement. Specifically, a rational jury could reasonably conclude that appellant's assertion of his right to remain silent suggested that appellant believed he was under arrest, and in turn, Officer Graves's reply indicated that he was in fact operating under the same belief, stating to appellant he was only requesting appellant's identity and not investigating about the theft any further. *See id*.

### Intentional Refusal

We next consider whether appellant intentionally refused to provide Officer

Graves with his name. The term "refuse" is not defined in the Penal Code, but is not ambiguous, so we consider its plain ordinary meaning. In determining plain meaning, words and phrases must be read in context and construed according to the rules of grammar and usage. *Sanchez v. State*, 995 S.W.2d at 683 (citing Tex. Gov't Code Ann. § 311.011(a)). Common ordinary meanings of the term "refuse" as expressed in the dictionary are "1. to express oneself as unwilling to accept, 2a. to show or express unwillingness to do or comply with refused to answer the question, 2b. to not allow someone to have or do (something)." *Webster's Online Dictionary,* "refuse".

The State urges us to find that appellant's conduct "pretend[ing] to be asleep for some moments" constituted an intentional refusal to provide his name. We are reluctant to equate appellant's silence alone with an act of "intentional refusal" when a true answer would have incriminated him for a violation under subsection (b)(1) based on previous statements made during the exchange. But a reasonable jury could have concluded that appellant exhibited conduct manifesting an intent to refuse to identify himself shortly after Officer Graves asked appellant to spell his name again because the name he had first provided did not yield an existing person registered in the system. At that point in time, the body cam video revealed that appellant nodded his head, and then reminded Officer Graves that he had been read his *Miranda* rights. Officer Graves responded by explaining that he was simply trying to identify appellant and appellant insisted that the name he had already provided was his true name. Considering this conduct exhibited in the video, the jury was also free to accept as true Officer Graves's testimony that appellant refused to provide a correct name.

After watching the entire exchange and learning that the name appellant had first provided was false, a jury could have reasonably believed that when appellant

12

nodded, and verbally insisted that Officer Graves already had the identifying information that he needed, that appellant was intentionally refusing to provide his true name.

Resolving conflicts in witness testimony in favor of the conviction, the evidence shows that Officer Graves recovered appellant's knife, handcuffed appellant, gathered inculpatory evidence concerning appellant's theft charge, informed appellant of his *Miranda* rights, and when sufficiently restrained, requested his name. Appellant's subsequent insistence that the incorrect name he had already provided the officer was correct operated as a refusal to provide his true name. Because the officers had an objectively reasonable basis for questioning appellant, appellant was lawfully detained shortly after Officer Graves arrived, and later lawfully arrested after appellant watched Officer Graves investigate and develop probable cause that appellant committed a theft crime. A jury could reasonably conclude that when Officer Graves commanded appellant to sit, after informing of his *Miranda* rights, this additional act of limiting appellant's mobility, constituted a restraint that was more than merely necessary to safeguard his safety, and more than necessary to merely assure appellant's presence during a period of investigation. Appellant refused to assist in clarifying his identity after he was under arrest. We hold that the evidence was sufficient for the trial court to conclude beyond a reasonable doubt that appellant was lawfully arrested when he refused to provide his correct name to Officer Graves.

Accordingly, we overrule appellant's sole issue.

13

### III. CONCLUSION

Having overruled appellant's sole issue, we affirm.


/s/     Randy Wilson
Justice

Panel consists of Justices Jewell, Spain and Wilson (Spain, J., dissenting).

Publish — TEX. R. APP. P. 47.2(b).

14